J. S11014/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: I.L., A MINOR  :    IN THE SUPERIOR COURT OF
:         PENNSYLVANIA
APPEAL OF: J.L., FATHER       :
:       No. 1457 EDA 2015

Appeal from the Order Entered April 8, 2015,
in the Court of Common Pleas of Philadelphia County
Family Court Division at Nos. DP# CP-51-DP-0000141-2015,
FN# 51-FN-002667-2014

IN THE INTEREST OF: I.S., A MINOR  :    IN THE SUPERIOR COURT OF
:         PENNSYLVANIA
APPEAL OF: J.L., FATHER       :
:       No. 1459 EDA 2015

Appeal from the Order Entered April 8, 2015,
in the Court of Common Pleas of Philadelphia County
Family Court Division at Nos. DP# CP-51-DP-0002926-2014,
FN# 51-FN-002667-2014

BEFORE: FORD ELLIOTT, P.J.E., OTT AND MUSMANNO, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED MAY 09, 2016**

J.L. ("Father" or "Putative Father") appeals from the orders, dated and entered on April 8, 2015, that found child abuse as to a female child, I.S. ("Child 1"), born in March of 2007, and granted the petition filed by the Philadelphia Department of Human Services ("DHS" or the "Agency") to adjudicate a second male child, I.L. ("Child 2"), born in January of 2015

(collectively referred to as "Children") dependent pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6302(1).[1]  We affirm.

In its opinion entered on August 31, 2015, the trial court set forth the following factual background and procedural history regarding Father's appeal, which we incorporate herein, as follows.

> On December 12, 2014, the Department of Human Services ("DHS") received a Child Protective Services (CPS) report alleging that Child 1 had vaginal discharge for two weeks; that on December 10, 2014, Mother took Child 1 to the pediatrician; that a culture was done and it indicated that Child 1 contracted gonorrhea; that sexual abuse had occurred and that the perpetrator was unidentified.  The report further alleged that [M]other denied knowing who abused Child 1 and Child 1 denied being touched in a sexual inappropriate manner.  The report also alleged that Child 1's [m]other was one of her primary caregivers and that this family had a history with DHS.  The CPS report was indicated due to the fact that Mother and [f]ather of Child 2 tested positive for gonorrhea. (N.T. 4/8/15, pg. 50).  Both Mother and [f]ather of Child 2 live with the Children.  (N.T. 4/8/15, pg. 47). Father is only the biological [f]ather to Child 2.
>
> On December 12, 2014, DHS obtained an Order of Protective Custody ("OPC") for Child 1 to ensure her safety and well-being.  Child 1 was placed in foster care through Turning Points for Children, where she currently remains.  The whereabouts of

---

[1] In separate orders entered on April 8, 2015, the trial court found Child 1 dependent pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6302(1), with placement in foster care and a permanency goal of return to parent or guardian, 42 Pa.C.S.A. § 6351, and found aggravated circumstances against Mother pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6341([c])(1).  Mother ("Mother") has filed a separate appeal, which we address in a separate memorandum at Docket Nos. 1393 and 1395 EDA 2015.  Mother has filed her own appeal, and she is not a party in the present appeal.

Child 1['s] biological father [are] unknown. On December 15, 2014, at the Shelter Care hearing, the trial court ordered the OPC to be lifted and the temporary commitment to DHS stand. DHS was ordered to explore other family members as possible placement resources. [On December 17, 2014, DHS filed a dependency petition.] On December 19, 2014, the trial court granted [a] continuance and deferred the adjudication hearing. On February 20, 2015, the trial court granted [a] continuance due to Father's attorney's unavailability. [On April 8, 2015, the trial court held the adjudicatory hearing on the dependency petition.][Footnote 1] On April 8, 2015, the trial court adjudicated the Children dependent, found child abuse as to Child 1, as to [M]other and also found that aggravated circumstances existed as to Child 1 against [M]other[,] but DHS must make reasonable efforts to reunify [Child 1] with [M]other. Child abuse was also found against [F]ather of Child 2 as to Child 1. (N.T. 4/8/15, pg. 92-96).

[Footnote 1] At the hearing, DHS presented the testimony of Maria McColgan, the director of the child protection program at St. Christopher's Hospital for Children, and a stipulated expert in child abuse pediatrics. N.T., 4/8/15, at 6-8. DHS also presented the testimony of Dawn George, a DHS social worker investigator in the specialty unit assigned to the case. *Id.* at 43. DHS then presented the testimony of Christina Cross, the Community Umbrella Agency ("CUA") case manager from Turning Points for Children. *Id.* at 57. Mother testified on her own behalf. *Id.* at 65.

Trial court opinion, 9/3/15 at 1-2 [Father] (footnotes added).

On May 8, 2015, Father filed notices of appeal, along with concise statements of errors complained of on appeal pursuant to

Pa.R.A.P. 1925(a)(2)(i) and (b). On June 8, 2015, this court, **sua sponte**, entered an order consolidating the appeals.

Father raises two issues on appeal:

> Whether the trial court erred and/or abused its discretion by adjudicating the child I.L. dependent pursuant to 42 Pa.C.S.A. [§] 6301, 6302 and 6341.

> Whether the trial court erred and/or abused its discretion by determining that Appellant (and Mother) had abused the child pursuant to 23 Pa.C.S.A. [§] 6301 and 6303.

Father's brief, at 4.[2]

Father's arguments in his brief amount to challenges to the sufficiency of the evidence to support the trial court's determinations in its orders on appeal.

The Pennsylvania Supreme Court recently set forth our standard of review in a dependency case as follows.

> "The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." **In re R.J.T.**, 608 Pa. 9, [27], 9 A.3d 1179, 1190 (Pa. 2010). We review for abuse of discretion[.]

**In Interest of: L.Z.**, **A Minor Child**, 111 A.3d 1164, 1174 (Pa. 2015).

Section 6302 of the Juvenile Act defines a "dependent child" as:

---

[2] Father stated his issues somewhat differently in his concise statements. We, nevertheless, find them preserved for this court's review.

[a] child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302.

In *In re G., T.*, 845 A.2d 870 (Pa.Super. 2004), this court clarified the definition of "dependent child" further.

> The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

*Id.* at 872 (internal quotations and citations omitted); *see also In re J.C.*, 5 A.3d 284, 289 (Pa.Super. 2010). Additionally, we note that "[t]he burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *G., T.*, 845 A.2d at 872.

With regard to a dependent child, in *In re D.A.*, 801 A.2d 614 (Pa.Super. 2002) (*en banc*), this court explained:

> [A] court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the

> child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

*Id.* at 617.

The Juvenile Act defines "Aggravated circumstances" as including the following circumstances:

> (2) The child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent.

42 Pa.C.S.A. § 6302.

The Juvenile Act defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." 42 Pa.C.S.A. § 6302. The Juvenile Act defines "sexual violence" as follows.

> **"Sexual violence."** Rape, indecent contact as defined in 18 Pa.C.S. § 3101 (relating to definitions), incest or using, causing, permitting, persuading or coercing the child to engage in a prohibited sexual act as defined in 18 Pa.C.S. § 6312(a) (relating to sexual abuse of children) or a simulation of a prohibited sexual act for the purpose of photographing, videotaping, depicting on computer or filming involving the child.

42 Pa.C.S.A. § 6302.

The Juvenile Act, in turn, defines "aggravated physical neglect" as, "Any omission in the care of a child which results in a life-threatening condition or seriously impairs the child's functioning." *Id*.

Upon a determination that aggravated circumstances exist, the Juvenile Act at 42 Pa.C.S.A. § 6341(c.1), states the following.

> **(c.1) Aggravated circumstances.--**If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child is dependent, the court shall also determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made and schedule a hearing as required in section 6351(e)(3) (relating to disposition of dependent child).

42 Pa.C.S.A. § 6341(c.1).

Regarding the disposition of a dependent child, Section 6351(e), (f), (f.1), and (g) of the Juvenile Act provides the trial court with the criteria for its permanency plan for the subject child. Pursuant to those subsections of the Juvenile Act, the trial court is to determine the disposition that is best suited to the safety, protection and physical, mental and moral welfare of the child.

Section 6351(e) of the Juvenile Act provides in pertinent part:

> **(e) Permanency hearings.--**
>
> (1) [t]he court shall conduct a permanency hearing for the purpose of

determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child. In any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan in a manner appropriate to the child's age and maturity. . . .

(2) **If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child has been adjudicated dependent, the court shall then determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the child's parent, guardian or custodian or to preserve and reunify the family shall be made or continue to be made and schedule a hearing as provided in paragraph (3).**

. . . .

42 Pa.C.S.A. § 6351(e) (some emphasis added).

Section 6351(f) of the Juvenile Act prescribes the pertinent inquiry for

the reviewing court:

**(f) Matters to be determined at permanency hearing.--**

At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

(7) If the child has been placed outside the Commonwealth, whether the placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child.

. . . .

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or

to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

(i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

(ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

(iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

. . . .

**(f.1) Additional determination.--**Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:

(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(3) If and when the child will be placed with a legal custodian in cases where return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(4) If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(5) If and when the child will be placed in another living arrangement intended to be permanent in nature which is approved by the court in cases where the county agency has documented a compelling reason that it would not be best suited to the safety, protection and physical, mental and moral welfare of the child to be returned to the child's parent, guardian or custodian, to be placed for adoption, to be placed with a legal custodian or to be placed with a fit and wiling relative.

**(f.2) Evidence.--**Evidence of conduct by the parent that places the health, safety or welfare of the child at risk, including evidence of the use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk, shall be presented to the

court by the county agency or any other party at any disposition or permanency hearing whether or not the conduct was the basis for the determination of dependency.

**(g) Court order.--On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child.**

. . . .

42 Pa.C.S.A. § 6351 (some emphasis added).

At the time of the decision in this matter, Section 6303(b) of the Child Protective Services Law ("CPSL"), provided"

**(b.1) Child abuse.--**The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:

(1) Causing bodily injury to a child through any recent act or failure to act.

(2) Fabricating, feigning or intentionally exaggerating or inducing a medical symptom or disease which results in a potentially harmful medial evaluation or treatment to the child through any recent act.

(3) Causing or substantially contributing to serious mental injury to a child through any act or failure to act or series of such acts or failures to act.

(4) Causing sexual abuse or exploitation of a child through any act or failure to act.

(5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.

(6) Creating a likelihood of sexual abuse or exploitation of a child through any recent act or failure to act.

(7) Causing serious physical neglect of a child.

(8) Engaging in any of the following recent acts:

> (i) Kicking, biting, throwing, burning, stabbing or cutting a child in a manner that endangers the child.

> (ii) Unreasonably restraining or confining a child, based on consideration of the method, location or the duration of the restraint or confinement.

> (iii) Forcefully shaking a child under one year of age.

> (iv) Forcefully slapping or otherwise striking a child under one year of age.

> (v) Interfering with the breathing of a child.

> (vi) Causing a child to be present at a location while a violation of 18 Pa.C.S. § 7508.2 (relating to operation of methamphetamine laboratory) is occurring, provided that the violation is

being investigated by law enforcement.

(vii) Leaving a child unsupervised with an individual, other that the child's parent, who the actor knows or reasonably should have known:

(A) Is required to register as a Tier II or Tier III sexual offender under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders),[Footnote 8] where the victim of the sexual offense was under 18 years of age when the crime was committed.

(B) Has been determined to be a sexually violent predator under 42 Pa.C.S. § 9799.12 (relating to definitions).

(9) Causing the death of the child through any act or failure to act.

. . . .

---

[Footnote 8] 42 Pa.C.S.A. § 9799.10 *et seq.*

J. S11014/16

23 Pa.C.S.A. § 6303 (footnote in original).[3]

The identity of the abuser(s) may be established by prima facie evidence that the abuse normally would not have occurred except by reason of acts or omissions of the caregivers. Section 6381 of the CPSL provides as follows:

> **6381. Evidence in court proceedings.**
>
> **(d) Prima facie evidence of abuse.--**Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child.

23 Pa.C.S.A. § 6381(d).

This court has stated:

> [T]he focus of all dependency proceedings, including change of goal proceedings, must be on the safety, permanency, and well-being of the child. The best interests of the child take precedence over all other considerations, including the conduct and the rights of the parent. . . . [W]hile parental progress toward completion of a permanency plan is an important factor, it is not to be elevated to determinative status, to the exclusion of all other factors.

*In re A.K.*, 936 A.2d 528, 534 (Pa.Super. 2007).

---

[3] The CPSL was amended, effective December 31, 2014, to broaden the term "child abuse," as explained in *In Interest of: L.Z.*, 111 A.3d at 1168 n.3. Our supreme court's decision in *In Interest of: L.Z.* involved an application of the statute as it existed prior to the effective date of the amendment.

- 15 -

In *In Interest of: L.Z.*, our supreme court considered the question of whether this court, sitting *en banc*, improperly reversed the determination of the trial court that the child at issue suffered child abuse, and, through the application of the presumption of *prima facie* evidence of abuse set forth at 23 Pa.C.S.A. § 6381(d), that the abuse was perpetrated by his mother.

The facts in *In Interest of: L.Z.* were similar to the facts in the instant case. A 20-month-old male infant was brought to an emergency room by his mother and his maternal aunt, to be treated for a deep cut nearly halfway around the base of his penis. The physicians at the hospital noted bruising to the child's cheeks, severe diaper rash, and a yeast infection on the front of his body. Both women cared for the child together. The physicians suspected child abuse, as the women's explanations for the injuries to the child were consistent with abuse, and the injuries were inconsistent with the women's explanations. The physicians also suspected that the injuries were non-accidental.

The physician who treated the child at the hospital testified at the dependency adjudication hearing as an expert in pediatric medicine. When the doctor was asked whether the dark bruising to Child's cheeks would "cause a child severe pain," she responded, "I am sure it couldn't have been very comfortable." *In Interest of: L.Z.*, 111 A.3d at 1168. The doctor testified that the injuries (the penile laceration, cheek bruises and diaper

rash/yeast infection) were "consistent with a pattern of suspected child abuse," and that the child was a "victim of child abuse." *Id.*

The trial court found that the child was a victim of child abuse as defined at 23 Pa.C.S.A. § 6303, and that the mother was the perpetrator of the abuse. *In Interest of: L.Z.*, 111 A.3d at 1168-1169. The court transferred temporary legal custody of the child to the county agency, and placed the child in his maternal grandfather's physical custody, with his parents receiving supervised weekly visitation. The trial court also entered an order finding that aggravated circumstances existed because the child was "the victim of physical abuse resulting in serious bodily injury, sexual violence, or aggravated neglect by the parent; proven as to Mother." *Id.* at at 1169. The trial court concluded that the county agency did not need to make further efforts to reunify the child with his mother.

The mother filed an appeal to this court. Sitting *en banc*, the majority of the court affirmed the dependency adjudication but vacated the abuse determination. The majority of the court *en banc* recognized that the mother had waived certain issues for purposes of appellate review, as she had voluntarily relinquished her parental rights while the appeal was pending, prior to reargument. *Id.* The mother waived her challenges to the trial court's rulings that aggravated circumstances existed, and that the county agency need not make reasonable efforts at reunification.

The dissenting Judges sitting on the court *en banc* would have affirmed the trial court's findings that the child's injuries constituted abuse. The dissent took the position that the majority improperly limited the evidentiary presumption of Section 6381(d) to find *prima facie* evidence of an abuser's identity only when the abuser was proven to be present at the time of the injuries. *Id.* at at 1171.

The guardian *ad litem* for the child successfully sought relief in our supreme court. Our supreme court held that presumption set forth in Section 6381(d) was applicable to the case, and that the mother offered no testimony to rebut it. *Id.* at 1186. Our supreme court concluded that the trial court properly found that the mother perpetrated the abuse on the child either by inflicting the injuries, or by failing to protect the child from his maternal aunt. Thus, our supreme court reversed this court's *en banc* decision, and reinstated the trial court's order. *Id.*

In reaching this conclusion, our supreme court stated as follows.

> [C]hild abuse cases often involve a child presenting to a hospital with significant injuries that are entirely consistent with common types of child abuse and entirely inconsistent with the implausible explanations concocted by the parents and responsible persons to avoid allegations of child abuse. As noted, in cases where multiple caregivers are involved, the individuals frequently "circle the wagons" or alternatively point fingers at each other. As the children may be too young or fearful to describe the abuse, CYS agencies are left to prove their case with only the physical evidence of injuries that would not ordinarily be sustained but for the action of the parents or responsible persons and the

implausible statements of the parents and responsible persons. Thus, while they can prove the existence of abuse rather easily, they have no ability to assign responsibility for the heinous act among the responsible adults. As Judge Tamilia observed in 1993, "the Legislature deemed it wise and necessary to establish a different evidentiary standard" by enacting Section 6381's(d)'s presumption to avoid this evidentiary conundrum and protect children from future abuse. [*In the Interest of J.R.W.*, 631 A.2d 1019, 1023 (Pa. Super. 1993)]. . . . We emphasize that, when a child is in the care of multiple parents or other persons responsible for care, those individuals are accountable for the care and protection of the child whether they actually inflicted the injury or failed in their duty to protect the child.

Moreover, the Legislature balanced the presumption of Section 6381(d) by making it rebuttable as it merely establishes "*prima facie* evidence" that the parent perpetrated the abuse. 23 Pa.C.S. § 6381(d). As commonly understood, *prima facie* evidence is "[s]uch evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient." Black's Law Dictionary 825 (6th ed. Abridged 1991). Accordingly, evidence that a child suffered injury that would not ordinarily be sustained but for acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the presumption. The parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the CYS agency and the rebuttal of the parent or responsible person.

Applying Section 6381(d) as set forth above to the case at bar, we affirm the trial court's determination that [the mother] perpetrated the abuse in the form of the laceration, the cheek bruising, and the severe diaper rash and yeast infection. First, because the medical evidence presented by [the agency] demonstrated that [the child's] injuries were neither accidental nor self-inflicted and because [the child] was only in the care of [his mother and aunt], the injuries were shown to be "of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child[.]" 23 Pa.C.S. § 6381(d). Ergo, either [the aunt or mother] or both inflicted the abuse [the child] suffered or failed to protect him from the other's abuse. [The mother] failed to rebut the presumption by presenting evidence or testimony from her, [the aunt] or her boyfriend establishing that [the child] was not in her care when the injuries were suffered and that she had no reason to question her decision to leave [the child] in [his aunt's] care. Likewise, neither [the aunt] nor anyone on her behalf testified. [The mother and aunt's] self-serving claims made at the hospital were neither under oath nor subject to cross-examination. They were outside-the-record and do not constitute rebuttal evidence.[Footnote 25]

> [Footnote 25] Moreover, we would not fault a trial court for failing to credit any explanations that would have been given considering the implausibility of the other assertions provided at the hospital regarding [the child's] injuries.

Instead, ample, uncontested, unrebutted evidence existed for the trial court to presume that [the mother] perpetrated the abuse on [the child]. In regard to the diaper rash, it was put into evidence that [the mother] acknowledged to the hospital staff her awareness of the condition and blamed it on weeks of diarrhea. Dr. Silver testified rejecting [the

- 20 -

mother's] extrajudicial contention because the rash was on the front of [the child's] body, indicative of prolonged contact with urine, rather than on the buttocks, which would have been consistent with diarrhea. Thus, the trial court was well within its discretion and fully supported by the record when it properly concluded that [the child] suffered physical neglect as a result of the severe diaper rash and yeast infection due to his caregiver's failure to change his diaper (or obtain medical treatment).

Additionally, the trial court did not abuse its discretion in discrediting [the mother's] implausible out-of-court explanation and instead crediting the treating doctor's testimonial determination that the cheek bruising was classic child abuse. The court found Dr. Silver credible given the pattern of bruises showing that someone squeezed [the child's] face between her thumb and fingers, bruising which could have occurred during the window of time [the mother] acknowledged having control of [the child] and bruising that the doctor testified would have cause [the child] severe pain. Moreover, even assuming [the mother] did not inflict the penile laceration or the cheek bruising, she is still responsible for [the child's] injuries by failing to protect him from [the aunt], absent rebuttal from [the mother] that she had no reason to fear leaving [the child] with [the aunt].

We conclude that the presumption of Section 6381(d) is applicable to this case and that [the mother] offered no testimony to rebut it. Thus, the trial court properly found [the mother] perpetrated the abuse on [the child] either by inflicting the injuries or failing to protect [the child] from [the aunt].

*In Interest of: L.Z.*, 111 A.3d at 1185-1186 (footnote omitted).

Here, the trial court addressed Father's issues, stating as follows.

- 21 -

Father filed separate appeals, but the grounds for both appeals were consolidated. On appeal, Father raises the following issues:

1. The trial court erred in making a finding of child abuse as to Child 1 against [f]ather of Child 2 pursuant to 23 Pa.C.S.A. § 6301 as DHS failed to meet its burden of proof.

2. The trial court erred when it found that DHS met its burden of clear and convincing evidence that Child 2 was dependent pursuant to 42 Pa.C.S.A. § 6302.

Father's first issue on appeal argues that the trial court erred in determining that Child 1 was a victim of child abuse. The Child Protective Services Law ("CPSL") 23 [Pa].C.S.A. § 6303(b)(ii) establishes that any recent act or failure to act by a perpetrator which causes sexual abuse to a child under 18 years old constitutes child abuse. Section 6303(b)(iii) establishes that any recent act, failure to act or series of such acts or failures to act by a perpetrator which creates an imminent risk of sexual abuse of a child under 18 years of age also constitutes child abuse. Sexual abuse under CPSL 23 [Pa.]C.S.A. § 6303(b) is defined as the employment, use, persuasion, inducement, enticement or coercion of a child to engage in or assist another individual to engage in sexually explicit conduct.

The record must show by clear and convincing evidence that the child suffered abuse as defined by the CPSL 23 [Pa.]C.S.A. § 6303(a). ***In the Matter of L.Z.***, 111 A.3d 1164 (Pa. 2015). As to the identity of the perpetrator of child abuse, the trial court is required to find perpetrator's identity by prima facie standard. ***In Interest of J.R.W.***, 631 A.2d 1019, 1023-1024 (Pa. Super. 1993). CPSL 23 [Pa.]C.S.A. § 6303(d) establishes that evidence that a child has suffered child abuse of such a nature

as would ordinarily not be sustained or exist except by reason of acts or omission of the parent or other person responsible for the welfare of the child, shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare [sic] child. This rule created an evidentiary presumption against the child's caregiver at the time of the abuse. *In re JG.* [sic], 984 A.2d 541, 547 (Pa. Super. 2009). Thus, proof of the nature of the child's harm, alone, is prima facie evidence of child abuse by anyone who is found to be responsible for the welfare of the child at the time of the alleged injuries. *In re JG.*, 984 A.2d 541, 547 (Pa. Super. 2009), *In the Matter of L.Z.*, 111 A.3d 1164 (Pa. 2015).

The record established that Child 1 was diagnosed with gonorrhea in her throat, rectum and vagina. (N.T. 4/8/15, pgs. 10, 14). Such a diagnosis raised serious concerns to St. Christopher's Hospital medical staff given that gonorrhea is typically transmitted by sexual contact. (N.T. 4/8/15, pgs. 9-11). Likewise, Child 1's diagnosis was highly concerning as to [c]hild abuse. (N.T. 4/8/15, pg. 12). Expert testimony established that gonorrhea's bacteria does not travel through the human body and Child 1's diagnosis of gonorrhea in throat, rectum and vagina increased the sexual contact as to the method of transmission. (N.T. 4/8/15, pgs. 11-12). In fact, the record established that it is very unlikely to be infected with pharyngeal gonorrhea through non-sexual contact. (N.T. 4/8/15, pg. 23). Other non-sexual ways of transmission were considered and evaluated by Dr. McColgan. (N.T. 4/8/15, pg. 21). Dr. Maria McColgan's testimony ruled out other possibilities of getting infected with gonorrhea. (N.T. 4/8/15, pgs. 12-13, 15-16, 21-23, 32, 36). Accordingly, Dr. McColgan concluded to a medical degree of certainty that Child 1's infection with gonorrhea was the product of sexual abuse. (N.T. 4/8/15, pg. 16). Dr. Maria McColgan's testimony was very credible.

In relation to the identity of the abuser, the record established that [M]other was one of Child's primary caregivers at the moment in which Child 1 was infected. The other was Child 2's [f]ather who, like [M]other, admitted being infected with gonorrhea. (N.T. 4/8/15, pgs. 15, 17, 44, 45). The record established that Child 1 and Child 2 were residing with [M]other and Father. (N.T. 4/8/15, pgs. 44, 45, 47). Both Father of Child 2 and [M]other were found to be responsible for the welfare of the Children at the time of the alleged injuries. Putative Father was as much responsible for the care of Child 1 as was Mother. The transmission of gonorrhea, a sexually transmitted disease, would not have occurred except by [P]utative Father's acts or omissions. As a result, the record established prima facie evidence of child abuse as to [P]utative Father, and the trial court did not hear competent evidence that rebutted such a presumption. Thus DHS met its burden by clear and convincing evidence that Child 1 suffered sexual abuse at the time Child 1 was in the care of [P]utative Father. Putative Father was responsible for the welfare of Child 1.

Father's second issue on appeal argued that the trial court erred in adjudicating the Child 2 dependent. Under 42 Pa.C.S.A. § 6302 of the definition of a "Dependent Child" paragraph(1) a child will be adjudicated dependent if the trial court determines, by clear and convincing evidence, that child is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian. Clear and convincing evidence has been defined as the testimony that is so clear, direct, weight and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of the precise facts in issue. *In re C.R.S.*, 696 [A.]2d 840, 843 (Pa. Super. 1997). The purpose of the Juvenile Act is to

- 24 -

preserve the unity of the family whenever possible. 42 Pa.C.S.A. § 6301(b)(1), Nonetheless a child will be adjudicated dependent when he is presently without parental care and the care is not immediately available. *In re R.T.*, 405 Pa. Super. 156 (1991). The Superior Court has defined proper parental care as the care which is geared to the particularized needs of the child and, at the minimum, is likely to prevent serious injury to the child. *In re C.R.S.*, *supra* at 845. In general, a finding of abuse has been held sufficient under most circumstances to support an adjudication of dependency. *In [I]nterest of J.M.*, 652 A.2d 877, 881 (Pa. Super. 1997). The trial court adjudicated Child 1 dependent under 42 Pa.C.S.A. § 6301(b)(1) by finding that Child 1 was sexually abused and infected with a sexual transmitted disease.

The Pennsylvania Juvenile Act is now significantly more sensitive to the facts that sexually abused children may be without proper parental care and control as required by the law. *In re W.M.*, 842 A.2d 425m 429 (Pa. Super 2004). The Juvenile Act takes in consideration the sense of vulnerability, fear and helplessness that siblings may feel when living in an environment where their sibling has been sexually abused. *Id.* The focus is not on whether the other sibling is actually at risk of sexual abuse but if the siblings fit the definition of lacking proper parental care. *Id.* It is within the trial court's discretion to determine that siblings of sexually abused children fit that definition, even if there is no evidence that the siblings will be sexually abused. *Id.* This major sensitivity to sexually abused children without proper parental care and control was also reflected in the Pennsylvania Juvenile Act amendment effective, since January 1, 1999. Such an amendment, added the definitions of "aggravated circumstances" and "sexual violence" to the Juvenile Act including siblings of children who have been sexually abused. *In re of [sic] S.B.*, 833 A.2d 1116, 1122 (Pa. Super. 2003).

The record established that Child 2 is a vulnerable six-month year [sic] old infant. The trial court is extremely concerned about leaving Child 2 in an environment where his sibling, Child 1, has been sexually abused and infected with a sexually transmitted disease. Under these circumstances, the threat of harm evidenced on the conduct of Father as to Child 1 is sufficient for a finding of dependency as to Child 2. Both Children live with Father. The lack of parental care as to Child 1 places the health, safety, and welfare of Child 2 at risk. Father is unable to provide immediate care that is at the minimum likely to prevent serious injury to Child 2. Accordingly, the trial court used its discretion to adjudicate Child 2 as a dependent fitting the definition of a dependent child under 42 Pa.C.S.A. § 6302(1). All DHS witnesses were unwavering and credible.

**Conclusion:**

For the aforementioned reasons, the court finds that DHS met its statutory burden regarding Chld 1 child abuse against [P]utative Father and Child 2 dependency adjudication. Accordingly, the order entered on April 8, 2015, should be affirmed.

Trial court opinion, 9/3/15 at 2-5 [Father].

As our supreme court explained in *In Interest of: L.Z.*, multiple caretaker child abuse situations are rife with credibility determinations for the trial court, and call for the trial court to make credibility determinations as to the plausible and implausible explanations for the child's injuries. *Id.* at 1186 n.25.

After a careful review of the record in this matter, we find the trial court's credibility findings are supported by competent evidence in the

record.  ***In re R.J.T.***, 9 A.3d at 1190.  We find no abuse of the trial court's discretion.  Accordingly, we affirm the orders of the trial court.

Orders affirmed.

Musmanno, J. joins the Memorandum.

Ott, J. concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/2016