J-A15027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| K.F-M. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| J.W.M. | |
| Appellant | No. 1955 MDA 2016 |

Appeal from the Order Entered November 7, 2016
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): CI-16-07234

BEFORE: MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY SOLANO, J.:         **FILED JULY 27, 2017**

Appellant J.W.M. ("Father") appeals from the order of the trial court granting the petition by K.F.-M. ("Mother") for a protection from abuse ("PFA") order. We affirm.

The underlying facts are as follows. Father and Mother are married with three children, all of whom are female. L.M., who is thirteen-years-old, is the eldest of the three girls.[1] The parties separated on April 15, 2016, when Mother left the marital home. The parties came to a custody agreement on June 16, 2016, which established that they would share equal custody of the children. The parties continued to dispute the specifics of their custody and support arrangements and their impending divorce.

---

[1] The other two children are 11- and 8-years-old.

Mother testified that while they were discussing divorce, Father, a police officer, began looking at suicide information, "made it a point to tell [her] how other officers have shot themselves because their wives left them," and complained about what she was doing to him. N.T., 10/25/16, at 22.

On August 7, 2016, while the children were staying with Mother, L.M. gave Mother a letter at 9 p.m., before going to bed. In the letter, L.M. disclosed that she had been sexually abused by Father in late 2015. A few hours after receiving the letter, Mother telephoned the Lancaster County Children and Youth Social Service Agency ("Agency") to report the allegations of abuse. The next day, August 8, 2016, Mother filed a report with the police regarding the allegations of abuse.

On August 10, 2016, Mother filed a PFA petition. The trial court conducted an *ex parte* proceeding on the petition that same day. At that hearing, Mother testified regarding the contents of the letter. Based on Mother's testimony, the court entered a temporary PFA order pending a hearing on the petition. The order excluded Father from the home of Mother and Mother's places of work, prohibited all contact with Mother and their three children, awarded Mother temporary sole custody of the children, and ordered Father to relinquish his firearm. The order stated that it would be superseded by any subsequent custody order issued in a custody action. The court scheduled a full evidentiary hearing on the petition for August 17, 2016.

On August 17, 2016, Mother requested that the hearing be continued, as she was in the process of seeking representation through the Domestic Violence Legal Clinic ("DVLC"). The continuance was granted, and the hearing was rescheduled for August 30, 2016.

On August 30, 2016, a continuance was again requested by Mother, at the request of the Agency and the Lancaster County District Attorney's Office, both of which were investigating the allegations. The court granted the request and scheduled the hearing for October 11, 2016. The court chose that date because it was the first day following the sixty-day time-frame in which the Agency planned to have completed its investigation. The court also agreed to Father's request to amend the temporary PFA order to permit him to possess his firearm while on active duty as a police officer.

On September 9, 2016, Father filed a motion to dismiss Mother's PFA petition. In the motion, Father argued many points, including that the temporary PFA order violated his constitutional right to bear arms and to parent his children,[2] the temporary PFA order was not founded on a showing of "immediate and present danger of abuse," and the two continuances that had been granted violated his constitutional right to due process. Mot., 9/9/16, at ¶ 14-38. Father moved on October 11, 2016, to obtain transcripts of the *ex parte* proceeding for use in connection with his arguments.

_____

[2] In particular, Father argued against the provision of the temporary PFA which prevented contact with the two children who had not alleged abuse.

On October 11, 2016, at the commencement of the evidentiary hearing, Father brought up his outstanding motion to dismiss. The trial court, which had been unaware of the motion because it mistakenly had not been forwarded to the judge's chambers after it had been filed, again continued the hearing, until October 25, 2016, to allow Mother to respond to the motion in writing and to allow the court to consider both the motion and response. Mother filed a response on October 18, 2016.

On October 25, 2016, the evidentiary hearing commenced. At the beginning of the hearing, the court denied Father's motion to dismiss. The court stated that Father had already received some relief related to his firearm when the court amended the temporary PFA order to allow him to possess his firearm while on active duty, and that, as stated in the temporary order, Father could have pursued custody of the children through a custody filing. The court also stated, "I think, at this point, we are ready to proceed to a hearing, which would ultimately affirm the correctness of a temporary order or vindicate the rights that [Father] is seeking to defend depending on the outcome here." N.T., 10/25/16, at 5.[3]

At the hearing, Mother, L.M., and Father each testified. Mother testified consistently with her testimony at the *ex parte* hearing, and L.M. testified consistently with the contents of the letter. Father denied all allegations of abuse and claimed that Mother was pursuing the PFA action

_____

[3] A written order denying the motion was issued on October 28, 2016.

out of retaliation over disagreements related to the ongoing support and custody issues. Due to time constraints, the hearing was split, with the second half taking place on November 1, 2016.

Following the hearing, a final PFA order was entered, dated November 3, 2017. That order is for a term of nine months, and set to expire on August 3, 2017. It has the same protections as the temporary order, and allows Father access to his firearm while on duty. The final order also specifies that any order entered in a custody proceeding will supersede the custody portion of the final PFA order. An amended final order was entered on November 7, 2016, which named L.M. as the "protected party" under the order.[4]

Father filed a timely appeal on December 1, 2016, and a timely 1925(b) statement on December 21, 2016. He raises the following issues for our review:

    I.    Whether the trial court erred by issuing a temporary protection from abuse order upon only the hearsay testimony of [Mother], who had no [first-hand] knowledge of the alleged abuse?

    II.    Whether the trial court erred by continuing the hearing on the petition for protection from abuse more than 10 days from the date the petition was filed?

    III.    Whether the trial court erred by failing to dismiss the Petition for Protection from Abuse upon [Father's] motion?

_____

[4] Mother remained the named Plaintiff.

IV. Whether the trial court erred by entering a final order which precludes [Father] from possessing a firearm when the allegation of abuse did not involve the use of a firearm?

V. Whether the trial court erred by entering a final order which precludes defendant from having custody of all three of his children when the allegation of abuse was limited to one child during a brief period more than one year before the order was entered and the alleged victim's own testimony was that there had been no alleged incidents of abuse [of the other children]?

Father's Brief at 4 (suggested answers and some capitalization omitted).

We review the propriety of a PFA order for an abuse of discretion or an error of law. ***Commonwealth v. Walsh***, 36 A.3d 613, 617 (Pa. Super. 2012).

**Continuances of the Evidentiary Hearing**

We begin with Father's second issue, in which he complains that the trial court abused its discretion in granting continuances of the evidentiary hearing on the petition. Father preserved this issue by objecting to each of the continuances requested by Mother.

The Protection from Abuse Act, 23 Pa.C.S. §§ 6101-6122 ("Act"), sets forth procedures by which a party may seek protection from violence, sexual abuse, or other abuse defined in the Act.[5] Proceedings under the Act are

---

[5] Insofar as is relevant here, "abuse" is defined by the Act as —

The occurrence of one or more of the following acts between family or household members, . . . or persons who share biological parenthood:

*(Footnote Continued Next Page)*

- 6 -

initiated when a plaintiff files a petition pursuant to 23 Pa.C.S. § 6106. If the petition "alleges immediate and present danger of abuse to the plaintiff or minor children, the court shall conduct an ex parte proceeding." 23 Pa.C.S. § 6107(b)(i). The court may also enter a temporary PFA order[6] for the protection of those in immediate and present danger. *Id.* § 6107(b)(ii). Within ten days of the filing of the petition, the court must hold an evidentiary hearing, at which the plaintiff bears the burden of proving the allegation of abuse by a preponderance of the evidence. *Id.* § 6107(a). The defendant must be given notice of the hearing, and must be notified of his or her right to be represented by counsel. *Id.* Following the hearing, the court may deny relief and dismiss the petition or grant relief by issuing a final PFA

*(Footnote Continued)* ————————

> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.
>
> \* \* \*
>
> (4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

23 Pa.C.S. § 6102(a).

[6] We use the term "temporary PFA order" to refer to the PFA order that is entered pursuant to 23 Pa.C.S. § 6107(b)(ii).

order. *Id.* § 6108. The court is obligated to hold the evidentiary hearing before granting or denying relief on the petition. *See Burke ex rel. Burke v. Bauman*, 814 A.2d 206, 209 (Pa. Super. 2002) (trial court erred by dismissing petition prior to holding an evidentiary hearing).

Father asserts that the trial court erred because it did not hold an evidentiary hearing within ten days of Mother's filing of her petition under Section 6106. The Act states, "Within ten business days of the filing of a petition under this chapter, a hearing shall be held before the court, at which the plaintiff must prove the allegation of abuse by a preponderance of the evidence. . . ." 23 Pa.C.S. § 6107(a). Father argues that because of the multiple continuances granted by the trial court, this provision was violated.[7]

The trial court stated that the first continuance was granted to allow Mother to obtain counsel, and that the purposes for the other continuances "appear in the record." Trial Ct. Op. at 18. The court stated that it had "good cause" to grant the continuances, and that it —

> took steps to protect [Father's] rights by scheduling the evidentiary aspect of the hearing to proceed as soon as possible in light of the Agency's investigation and the Court's need to properly address the [Father's] Motion to Dismiss. The continuances granted in the present case were not unreasonable or the result of partiality, prejudice, bias or ill-will, and were within the Court's sound discretion to grant.

---

[7] Father specifically objects to the continuances granted on August 17, August 30, and October 11, 2016. His brief does not contain an objection to the fact that the hearing was adjourned on October 25 and resumed on November 1, 2016. *See* Father's Brief at 10-11.

*Id.* at 18.

This issue is governed by our decision in *Ferko-Fox v. Fox*, 68 A.3d 917 (Pa. Super. 2013). In that case, a PFA petition was filed on March 22, 2011, and a temporary PFA order was entered pending a hearing scheduled for March 28, 2011. Over the defendant's objection, the hearing was then continued to allow the plaintiff to secure counsel. The hearing commenced on May 9, 2011, but there was insufficient time to complete it on that date, requiring it to be resumed on September 28, 2011. The hearing completed on September 28, and the final order was issued on November 23, 2011. *See Ferko-Fox*, 68 A.3d at 919-20, 925-26.

The defendant in *Ferko-Fox* contended that the lengthy continuance violated the ten-day requirement in Section 6107(a), but we disagreed. We noted that Section 6107(c) of the Act, entitled "Continued hearings," clearly contemplated that a hearing under Section 6107 could be continued and therefore that the defendant's "contrary interpretation of the trial court's statutory authority to continue the evidentiary hearing is unpersuasive." 68 A.3d at 926. At oral argument, Father argued that our decision in *Ferko-Fox* should be limited to facts similar to those presented in that case — allowance of a single continuance to obtain counsel — but nothing in our decision or in Section 6107(c) supports such a narrow rule. Rather, we held that a trial court has statutory authority to continue a Section 6106 hearing, and that we will review its decision only to determine whether the grant of

the continuance was an abuse of discretion. *See id.* at 925-26. That holding is binding on this panel.

We concluded in *Ferko-Fox* that the trial court did not abuse its discretion in granting the continuance in that case. 68 A.3d at 926. But we also reprimanded the trial court for the duration of the delay that it permitted to take place:

> Although we find that the trial court did not abuse its discretion by granting the requested continuance so that Wife could obtain counsel, we must emphasize that the resultant six-month delay between the March 2011 PFA petition and the conclusion of the evidentiary hearing during September 2011 is inexcusable. While we are cognizant of the scheduling difficulties that trial courts encounter on a daily basis, we stress that it is imperative to promptly schedule PFA proceedings in order to effectuate the purpose of the PFA Act and to protect a respondent's significant interest in mounting a defense to the allegations leveled in the PFA petition.

*Id.* at 926 n.8. We review the trial court's exercise of discretion in granting continuances in this case in light of our admonition in *Ferko-Fox*. In doing so, we note that "[a]n abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias or ill-will." *Id.* at 925 (citation omitted).

The trial court scheduled the evidentiary hearing for August 17, 2016, which was within ten business days of the filing of Mother's petition. Father had notice of the hearing and was present. The court therefore complied

with the Act by scheduling the hearing within ten days of the petition. *See Ferko-Fox*, 68 A.3d at 926. The court then granted Mother's first continuance request so that she could secure counsel, and it rescheduled the hearing to begin just two weeks later, on August 30, 2016. We find no abuse of discretion in granting this continuance. *See id.*

The court's later continuances are more problematic. On August 30, 2016, the court granted a second continuance request to permit completion of an investigation of the allegations by the Agency and the Lancaster County District Attorney's Office. The court rescheduled the hearing for a date six weeks later, October 11, 2016, because that was the first available day following the 60-day time-frame given by the Agency for completion of its work. In granting this continuance, the court expressed concern that holding the hearing would interfere with the investigations:

> There's always concern in a situation like [the external investigations] that something may happen in a collateral proceeding such as this that could adversely affect the other matters, whether it's a dependency matter or a criminal prosecution . . . .
>
> I would be inclined to grant the continuance because I'm very sensitive to – I'm not allowing either party to, in any manner, interfere with an ongoing investigation . . . . I realize that [this continuance] works a certain hardship on both parents and children depending on what the reality is, and we don't know what the reality is yet at this particular time. But I think it's for all concerned to keep the investigative process as pure as possible until there is some resolution.

N.T., 8/30/16, at 6. Although Father argues in his brief that this and the other continuances allowed by the trial court violated the ten-day

- 11 -

requirement in Section 6106(a), he makes no argument that the grounds advanced by the trial court for granting this continuance were an abuse of discretion. In the absence of such an argument, and cognizant of the limited basis for Father's objection, we do not find the decision of the court to allow an additional six weeks for an external investigation to be an abuse of discretion.

On October 11, 2016, the court, *sua sponte*, continued the evidentiary hearing for another two weeks to allow time for Mother to respond in writing to Father's motion to dismiss and for the court to assess that motion and Mother's response.[8] When the court reconvened on October 25, 2016, it denied the motion to dismiss, largely on the basis that it was moot due to the commencement of the evidentiary hearing. We find this final delay by the trial court to have been an abuse of discretion. While a breakdown of the court's operations (the failure to forward the motion to the trial judge) resulted in the delay in its consideration of Father's motion, the court should have been aware that any motion to dismiss the petition could not have been resolved absent a hearing on the petition, **see Burke**, 814 A.2d at 208, and that any motion to amend the temporary PFA order would have been rendered moot by the order entered following that hearing. Instead, the trial court again delayed that hearing, prolonging the duration of the

_____

[8] Mother also requested a further continuance because the District Attorney's Office had not concluded its investigation, but the court did not grant that request.

- 12 -

temporary PFA and aggravating the very complaints voiced in the motion. The final continuance was therefore manifestly unreasonable.

We conclude, however, that Father is not entitled to relief on this issue. The two-week delay was of relatively short duration. The order entered following the hearing was substantially similar to the temporary PFA order that was in place pending the hearing, meaning that Father was not substantially prejudiced by being forced to abide by that temporary order for that additional two-week period. The Act is silent on what remedy is appropriate when there is undue delay between the filing of a PFA petition and an evidentiary hearing, and Father's brief does not specify the relief he seeks on this issue, other than to have the final PFA order "overturned." **See** Father's Brief at 10-11, 18. In light of the trial court's findings in favor of Mother on the merits at the final hearing, we find outright reversal of the PFA order to be an inappropriate remedy for this error. In the words of **Ferko-Fox**, 68 A.3d at 926 n.8, reversal would neither "effectuate the purpose of the PFA Act," nor "protect [Father's] significant interest in mounting a defense to the allegations leveled in the PFA petition." Therefore, here, as in **Ferko-Fox**, we reprimand the trial court for this two-week delay, but conclude that no additional relief is due.

### Issues Relating to the Temporary PFA Order

Father's first and third issues both relate to the temporary PFA order. His first issue is a complaint that the trial court erred when it issued that

- 13 -

order because it was based solely on hearsay testimony by Mother about the abuse that L.M. had asserted in her August 7, 2016 letter to Mother. Although Mother testified at the *ex parte* hearing that gave rise to the temporary PFA order, L.M. did not. Mother did not witness any of the abuse alleged by L.M. Father cites ***K.H.D. v. J.D.***, 696 A.2d 232 (Pa. Super. 1997), in which this Court held that hearsay testimony alone is insufficient grounds on which to enter a **final** PFA order.

In his third issue, Father argues that the trial court erred in failing to grant his motion to dismiss the petition for protection from abuse. That motion argued, among other things, that the trial court erred in entering the temporary PFA order because the petition did not allege an immediate and present danger of abuse. Motion at ¶¶ 33-39 (23 Pa.C.S. § 6107(b)).[9] The alleged abuse took place in November or December of 2015, nine months prior to the filing of the petition, and there were no allegations of present abuse. ***Id.*** According to Father, the victim's fear of future abuse must be

---

[9] On appeal, Father also advances several reasons why the allegations against him are not credible. He bases his argument, however, on testimony presented at the evidentiary hearing for the final PFA order. Because Father's motion to dismiss challenged entry of the **temporary** PFA order on the basis of evidence not presented during the proceedings seeking that order, we find his argument regarding this evidence without merit and will not discuss it further.

reasonable, due to the definition of "abuse" contained within the Act, and L.M.'s fear of future abuse was not reasonable.[10]

We have held that issues relating to the propriety of a temporary PFA order will usually be mooted by the entry of a final PFA order. **See Ferko-Fox v. Fox**, 68 A.3d at 920 (an issue relating to the propriety of a temporary PFA order "is moot because the trial court entered a final PFA" order unless the issue is of great public importance, is capable of repetition but likely to evade review, or is likely to cause continuing detriment to a party). That certainly is true of Father's third issue regarding the sufficiency of the evidence supporting the temporary PFA order. Because that issue is specific to the facts of this case and any detriment to Father caused by errors regarding the temporary order has been superseded by entry of the final PFA order, the exceptions to the mootness doctrine do not apply.

Even if Father's third issue were not moot, we would conclude that Father is not entitled to relief with respect to it. Mother argues that her testimony at the *ex parte* proceeding did indicate an immediate and present danger of abuse sufficient to warrant the temporary PFA. During the *ex parte*

---

[10] The trial court did not address this particular aspect of Father's motion in its Rule 1925(a) opinion. Father's motion to dismiss covered several issues, but his Rule 1925(b) statement, like his statement of questions presented in his brief, did not specify precisely which issue he wished to pursue on appeal, and stated only that "the trial court erred by failing to dismiss the Petition for Protections from Abuse upon [Father's] motion." We caution that where a Rule 1925(b) statement is too vague for the trial court to identify the issue he wishes to appeal, this Court has discretion to find the issue waived. **See Commonwealth v. Reeves**, 907 A.2d 1, 2 (Pa. Super. 2006).

- 15 -

proceeding, Mother testified that, according to L.M., Father "made it a point to [make her] hug [him]," and that Father had been "staying in [L.M.'s] room for at least 30 minutes" after putting the other two girls to bed. Mother's Brief at 11 (citing N.T. 8/10/16, at 5). Mother also testified that her daughter was fearful of returning to Father's care. *Id.* Because the abuse occurred within the year prior to the proceeding, Mother argues that returning L.M. to Father would place her in fear of immediate and present danger of abuse. We agree with Mother that this evidence at the *ex parte* hearing satisfied the statutory requirements for the entry of a temporary PFA order by establishing that L.M. was in immediate and present danger in light of L.M.'s ongoing fear of being with Father.[11]

Although Father's first issue, regarding hearsay testimony, might present a type of recurring issue that would bring it within an exception to the mootness doctrine, we conclude that no relief is due with respect to it because that issue is waived. The trial court opined that Father waived that issue because he raised it for the first time in his Rule 1925(b) statement of errors. Trial Ct. Op., 1/23/17, at 13 (citing Pa.R.A.P. 302 (issues not raised before the trial court may not be raised for the first time on appeal)). We

---

[11] We note that Section 6107, which provides that a temporary PFA order is appropriate where there is an "immediate and present danger of abuse," does not use the word "reasonable." Mother alleged that Father sexually abused L.M., their minor child. Nowhere in the statutory language for granting a temporary PFA does it ask the court to ascertain whether the victim's fear of future abuse is "reasonable."

agree, as our review of the record discloses no place where Father raised this issue prior to the filing of his Rule 1925(b) statement. We recognize that temporary orders under the Act are issued following an *ex parte* proceeding with no notice to the defendant, which means that the defendant — here, Father — has no immediate opportunity to object to the evidence presented. Father does not argue, however, that it was impossible for him to object once he received the temporary order. Indeed, after entry of that order, Father successfully moved to amend it, and he obtained a transcript of the proceedings. In the absence of any argument by Father that he was unable to object, we conclude that his failure to do so before the trial court waived this issue and that Father is entitled to no relief with respect to it.

### Firearm Restriction in the Final PFA Order

In his fourth issue, Father complains that the trial court erred by including in the final PFA order a provision preventing him from possessing a firearm while he was not on active police duty. According to Father, because the allegations of abuse did not involve the use of a firearm, and no threats were made with a firearm, the court could not restrict his possession of firearms without analyzing the factors listed in 23 Pa.C.S. § 6107(b)(3)(ii)(E), one of the provisions of the Act addressing temporary PFA orders. Section 6107(b)(3) states:

> In addition to any other relief, the court may, pursuant to section 6108 (relating to relief), direct that the defendant temporarily relinquish to the sheriff any firearms, other weapons

or ammunition for the duration of the temporary order if the petition demonstrates any of the following:

(i)   Abuse which involves a firearm or other weapon.

(ii)  An immediate and present danger of abuse. In determining whether an immediate and present danger of abuse exists, the court shall consider a number of factors, including, but not limited to:

(A) Whether the temporary order of protection from abuse is not likely to achieve its purpose in the absence of such a condition.

(B) Whether the defendant has previously violated a protection from abuse order.

(C) Whether past or present abuse to the plaintiff or any of the plaintiff's minor children resulted in injury.

(D) Whether the abuse occurred in public.

(E) Whether the abuse includes:

(I)  threats of abuse or suicide;

(II) killing or threatening to kill pets;

(III) an escalation of violence;

(IV) stalking or obsessive behavior;

(V) sexual violence; or

(VI) drug or excessive alcohol use.

23 Pa.C.S. § 6107(b)(3). The trial court did not review these factors when it issued the final PFA order.

In response, Mother points out that the factors listed in Section 6107(b)(3)(ii)(E) apply only to temporary PFA orders, and that the court has

authority to restrict a defendant's possession of a firearm in a final PFA order under Section 6108(a)(7), which provides:

> **(a) General rule.**—The court may grant any protection order or approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor children. The order or agreement may include:
>
> * * *
>
> (7) Ordering the defendant to temporarily relinquish to the sheriff the defendant's other weapons and ammunition which have been used or been threatened to be used in an incident of abuse against the plaintiff or the minor children and the defendant's firearms and prohibiting the defendant from acquiring or possessing any firearm for the duration of the order and requiring the defendant to relinquish to the sheriff any firearm license . . . the defendant may possess. . . .

23 Pa.C.S. § 6108(a)(7). Alternatively, Mother argues that factors (E)(I) and (E)(V) under Section 6107(b)(3)(ii) were met because Father threatened suicide and the abuse he perpetrated was sexual violence.

The trial court agreed with Mother that it ordered the firearms restriction under Section 6108, not Section 6107, and it stated that the restriction is valid because a temporary limitation of the right to possess a firearm "is tailored to meet the special exigencies of . . . abuse cases." Trial Ct. Op. at 20. We agree that Section 6108, not Section 6107, is the applicable statutory provision and that the trial court therefore did not err, when entering a **final** PFA order, in failing to consider the factors in Section 6107, which address the entry of a **temporary** PFA order. We also find no

- 19 -

abuse of discretion or error of law in the court's restriction on Father's firearm.

Pursuant to § 6108(a)(7), the final order granting relief on a petition for protection from abuse may contain a provision ordering a defendant to relinquish:

> [1] the defendant's other weapons and ammunition which have been used or been threatened to be used in an incident of abuse against the plaintiff or the minor children **and [2] the defendant's firearms** . . .

23 Pa.C.S. § 6108(a)(7). Thus, while the statute states that the order may order relinquishment of weapons other than firearms if they "have been used or been threatened to be used in an incident of abuse against the plaintiff or the minor children," it places no such qualifier on an order for the relinquishment of firearms. Moreover, there was evidence in the case about a threat of suicide by firearm, and the trial court was convinced by a preponderance of the evidence that Father posed a danger to himself or others sufficient to warrant providing in the order a prohibition against possessing a firearm outside of active policy duty. The trial court therefore did not err in ordering Father to relinquish his firearm, even though it was not alleged to be an instrument of abuse by him.

### Prohibition on Contact with the Two Non-Victim Children

In his final issue, Father complains that the trial court abused its discretion in awarding Mother sole custody of their two younger daughters

whom he did not abuse. In support of this argument, Father relies on two subparts of Section 6108(a)(4) of the Act. The first, paragraph (i)(A), states:

> A defendant shall not be granted custody, partial custody or unsupervised visitation where it is alleged in the petition, and the court finds after a hearing under this chapter, that the defendant . . . abused the minor **children** of the parties or poses a risk of abuse toward the minor **children** of the parties.

23 Pa.C.S. § 6108(a)(4)(i)(A) (emphases added). The other provision, paragraph (iii), provides:

> Where the court finds after a hearing under this chapter that the defendant has inflicted serious abuse upon the plaintiff or a **child** or poses a risk of abuse toward the plaintiff or a **child**, the court may:
>
> > (A) award supervised visitation in a secure visitation facility; or
> >
> > (B) deny the defendant custodial access to a **child**.

23 Pa.C.S. § 6108(a)(4)(iii) (emphases added).[12]

Father argues that because Section 6108(a)(4)(iii) refers to a singular "child," it refers solely to the child who suffered the abuse. He continues: "when these two provisions are read together, it becomes clear that [Father] should at a minimum be granted supervised custodial access of children not named as parties in the Protection from Abuse action." Father's Brief at 16. Because in the instant case only one child, L.M., was shown to be abused, Father reasons he should not be deprived of supervised visits with his other two children.

---

[12] Father erroneously cites to 23 Pa.C.S. § 6108(a)(4)(ii)(A)-(B).

Mother counters that Father poses a risk to the other children and should therefore not be granted custody under Section 6108(a)(4)(i). Mother's Brief at 12-13. She notes that L.M. testified that she was concerned that the abuse could start again, due in part to Father sitting in her room at night while she tries to fall asleep and because she was scheduled to be spending more time alone with Father due to the shared custody agreement. *Id.* (citing N.T., 11/1/16, at 74). Mother claims "[i]t was not an error of law or abuse of discretion for the trial court to determine that, after finding that the Father had sexually abused [L.M.] less than one year prior, Father also posed a risk of abuse to the other two minor children." *Id.* at 13.

In its opinion, the trial court stated without explanation that it granted sole custody of the two younger children to Mother because it found that Father poses a threat to all three children. The trial court also pointed out that Father's complaint of any custody error "is moot in light of the fact that the Defendant is pursuing his remedies in the child custody cases." Trial Ct. Op. at 22.

We find that the trial court did not abuse its discretion when granting sole custody of all three children to Mother based on its finding that Father also poses a risk to his two younger children. *See* 23 Pa.C.S. § 6108(a)(4)(i)(A). We have previously explained, within a dependency context, that "it may be that a family member who perpetrates sexual abuse on one child is likely to abuse another child, either sexually or otherwise." *In*

*re M.W.*, 842 A.2d 425, 428-29 (Pa. Super. 2004); *see also In re S.B*., 833 A.2d 1116, 1122-23 (Pa. Super. 2003), *appeal denied*, 856 A.2d 835 (Pa. 2004); *In Interest of Y.P.*, 509 A.2d 397, 399 (Pa. Super. 1986) (finding that where one sibling was sexually abused, protection of the other sibling could not be achieved in the abuser's custody).[13] In light of its finding that Father had sexually abused his eldest daughter, it was not unreasonable for the trial court to conclude that Father may pose a risk of abuse to his two younger daughters. The trial court observed the witnesses' testimony first-hand, and we defer to its findings.[14]

Moreover, as the trial court repeatedly informed the parties in this case, a PFA action is not the primary vehicle by which custody issues ought

---

[13] *But see In Interest of J.M.*, 652 A.2d 877, 881 (Pa. Super.) (where one child sustained sexual abuse but siblings did not, stating that "a child should not be found dependent merely because a sibling is dependent"), *appeal denied*, 663 A.2d 692 (Pa. 1995). We find *J.M.* distinguishable from the present case. In *J.M.*, we had already reversed the finding of abuse by the father in a separate matter; the latter appeal was from the trial court's order declaring six siblings dependent after finding that one child had been abused by unrelated persons who had access to the home. We held that there was not clear and convincing evidence that proper parental care was unavailable for all of the children who had not been abused. We did **not** grant custody of any children to the child's abuser.

[14] In response to Father's complaint that the trial court ought to have allowed him supervised visits with his two younger children, we note that the Act does not mandate that a court tailor its relief to those custody solutions which are least restrictive to defendants. Rather, the Act, which allows only for temporary orders to prevent domestic abuse, provides that where the defendant poses **any** risk of abuse, the court may deny custodial access. *See* 23 Pa.C.S. § 6108(a)(4)(iii).

to be resolved. While the Act allows for emergency **temporary** orders of custody,[15] the "central and extraordinary feature of the PFA," is to "prospectively control and prevent domestic violence." **Stamus v. Dutcavich**, 938 A.2d 1098, 1102 n.5 (Pa. Super. 2007) (citation omitted). In contrast, custody proceedings, **see** 23 Pa.C.S. § 5321 to 5340, are designed to award custody based on the best interests of a child following the court's broad consideration of sixteen statutorily prescribed factors. **See** 23 Pa.C.S. §§ 5323, 5328, 5329.1.[16] Once entered, custody orders are not subject to change until a party petitions the court. **See** 23 Pa.C.S. § 5338. Thus, custody proceedings — not PFA proceedings — are the appropriate avenue in which to fully assess the best interests of the children and provide for their long-term needs.

We understand that custody proceedings are currently scheduled before the trial court and are expected to explore the magnitude of any risk Father poses to the children. We trust that the trial court will consider all relevant factors when deciding custody. In the meantime, we cannot say

---

[15] Section 6108(a)(4) specifies that custody relief under a PFA is to be "temporary," and Section 6108(d) provides that PFA orders shall be for a fixed time not to exceed three years. 23 Pa.C.S. § 6108(a)(4), (d).

[16] These include a consideration of: "The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child." **Id.** at 5328(a)(2). In considering such issues, the court may order a psychological evaluation of one or more parties. **See** Pa.R.C.P. 1915.8(a); **Jordan v. Jackson**, 876 A.2d 443, 455 (Pa. Super. 2005).

that the trial court abused its discretion in granting Mother temporary sole custody under the PFA order.

For all of the above reasons, Father is not entitled to relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/27/2017