In the Interest of: S.B., a Minor.

Appeal of: F.B. and A.M.B., the Parents of the Above–Named Minor.

In the Interest of: E.B., a Minor.

Superior Court of Pennsylvania.

Argued May 1, 2003.
Filed Aug. 6, 2003.

David H. Acker, New Castle, for E.B. and F.B., appellants.

Stacy J. Harris, Aliquippa, for S.B., appellee.

John L. Brown, Asst. Dist. Atty., Beaver, for Com., appellee.

Before: JOYCE, BOWES and TAMILIA, JJ.

TAMILIA, J.

¶ 1 Father and mother, F.B. and A.M.B., respectively, appeal the May 21, 2002 Order, adopting the findings of the master with regard to their children, placing E.B., a female, in foster care with the goal of adoption, and S.B., a male, in the custody of appellants under the protective supervision of Beaver County Children and Youth Services (CYS).

¶ 2 The record reveals the children are natural siblings, adopted by appellants from a Guatemalan orphanage in 2000. Father immediately began an illicit relationship with E.B., then age nine (9). The sexual nature of this relationship was suspected and then later confirmed when E.B. had the opportunity to spend time with the Mother Superior who had been in charge of the orphanage in Guatemala. This information immediately was reported to the local CYS, which subsequently interviewed E.B. and confirmed the abuse. CYS filed an allegation with Juvenile Services alleging both children to be dependent and several hearings were held before a juvenile master.

[T]he master issued a forty-nine (49) page report, with his recommendations on each of the cases, to the Court. On March 15, 2002, this Court issued two Orders, one for each juvenile, adopting the recommendations of the Juvenile Master and adjudicating each juvenile dependent. On May 16, 2002, a disposition hearing was held in each case, and on May 21, 2002, the Court issued an Order placing [E.B.] in foster care under Beaver County Children and Youth Services, and placing her brother, [S.B.], in the custody of his parents under the protective supervision of Beaver County Children and Youth Services.

(Trial Court Opinion, McBride, J., 10/11/02, p. 2.) Appellants did not file exceptions or post-trial motions as required by local practice in Beaver County but instead filed this direct appeal.

¶ 3 In their statement of questions, parents raise the following questions for our review.

1. When a finding is made that a child is well cared for, safe in his parents' home, and has neither been physically or sexually abused, can the child be found dependent because a sibling has been abused or neglected?

2. With regard to [S.B.], is the finding of dependency supported by clear and convincing evidence?

3. With regard to [E.B.], is the finding of dependency supported by clear and convincing evidence?

(Appellants' brief, at 8.)

In dependency proceedings our [scope] of review is broad. Nevertheless, we will accept those factual findings of the trial court that are supported by the record because the trial judge is in the best position to observe the witnesses and evaluate their credibility. We accord great weight to the trial judge's credibility determinations. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate.

*In re S.J.L.*, 828 A.2d 352, 355 (Pa.Super.2003)(internal quotations and citations omitted.)[1]

> 'A court is empowered by 42 Pa.C.S. § 6341 [**Adjudication**] (a) [**General rule**] and (c) [**Finding of dependency**] to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351. [**Disposition of dependent child**] (a) [General rule].'

*In re D.A.*, 801 A.2d 614, 617 (Pa.Super.2002)(*en banc*), *quoting In re M.L.*, 562 Pa. 646, 649, 757 A.2d 849, 850–851 (2000).

¶ 4 The trial court, for purposes of its Opinion, adopted and incorporated by reference the master's findings of fact as set forth at pages forty through forty-six of the Master's Report. (Trial Court Opinion at 3.) The court summarized these findings as follows:

> [E.B.] was eleven (11) years of age on August 9, 2001 (August 8, 2001 Hearing Transcript, incorrectly dated August 27, 2001, at p. 17). She testified that her adoptive father, [F.B.], started touching her "a couple of days after I came here". She also stated, "He started taking my clothes off", sometimes she did not have clothes on, and that he touched her with his hands and kissed her "in my legs". She did tell him to stop, and he got mad. When she told her adoptive mother, [A.M.B.], "she never cared. She didn't pay attention to me". She testified that her adoptive father showed her "yucky movies" with people who "didn't have no clothes on and they were touching their privates and stuff." Finally, she testified that her adoptive father touched her with "his private". [E.B.] testified that she did not want to live with her adoptive father or her adoptive mother.
>
> [E.B.] also spoke to various professionals concerning her allegations of sexual abuse at the hands of her adoptive father and lack of protection by her adoptive mother. These professionals included Kathleen Cloonan, Mother Ines Ayau, Father David Moriak, Children

1. There has been confusion with regard to standard of review and scope of review. Superior Court Judge Sydney Hoffman eloquently explained this distinction in the context of a parental rights termination case in his concurrence in *In re Adoption of James J.*, 332 Pa.Super. 486, 481 A.2d 892 (1984):

   > Scope of review..., relates to the appellate court's duty to ensure that the trial court has satisfactorily fulfilled the requirements of examining all evidentiary resources, conducting a full hearing and setting forth its decision in a full discursive opinion. A broad *scope* of review, therefore, requires that the appellate court conduct a comprehensive *review of the record formulated in* and the decision formulated by, the lower court. In other words, in reviewing a ter-

   mination of parental rights order, our Court must consider all evidence before the lower court as well as the lower court's findings of fact and conclusions of law. This does not mean, however, that we must employ an equally broad *standard* of review. Standard of review refers to an appellate court's ability, or rather the limits on its ability, to modify or reverse the action taken by the lower court. An abuse of discretion standard, therefore, requires that unless upon a broad, comprehensive review of the entire record we find that the lower court has abused its discretion, we may not alter the lower court's decision.

   *Id.*, at 900 (internal citations and quotations omitted, emphasis in original).

and Youth Services Intake Worker, Steven Socci, Leslie Waddell (who was a witness called by the attorney for the parents) and Children and Youth Services Caseworker, Nicole DiCicco. The Juvenile Master did find, and the Court does find, the revelations by the juvenile to all of the professionals concerned for her well-being, her "best interest", was consistent with her in-Court testimony before the Master.

(Trial Court Opinion at 3, citations omitted.)

¶ 5 Judge McBride continued,

Perhaps the most telling testimony in the entire proceeding was offered by Leslie Jan Waddell. As noted, she was called as a witness by counsel for the adoptive parents. She testified that she is a therapist in children's services. She stated that her office was initially called by [A.M.B.], the adoptive mother of the juveniles. [A.M.B.] telephoned on May 7, 2001 which was, ironically or not, the *same day* that Steven Socci, the Children and Youth Services Intake Worker, was interviewing [E.B.] at school. [A.M.B.] "...described that she ( [E.B.]) was having sexual outbursts and that she was preoccupied and—sexually preoccupied and questioned ([A.M.B.]) that there was sexual abuse". In her testimony, Ms. Waddell went into great detail describing her diagnosis of young [E.B.], *and she noted in that discussion that she found it interesting that the juvenile's foster parents had not seen any such behavior from the juvenile herself since she had been in their custody.*

(*Id.*, emphasis added to final sentence, citations omitted.) Judge McBride also took particular note of the parents' position, as posited by their attorney to the master during the disposition hearing convened on May 16, 2002, which was in opposition to [E.B.'s] return to their custody.

[Appellants' attorney] stated, "I don't think this young girl (referring to [E.B.]) should come home and neither do her parents (referring to his clients, [F.B. and A.M.B.]) ... certainly she [E.B.] cannot come home today, and I can't see her coming home in the foreseeable future ... I think it would be a rare case where she could be able to come home.

(*Id.* at 5.)

¶ 6 The trial court, as extensively quoted above, dealt exhaustively with the evidence presented as to E.B. and it is incongruous of the parents and defense counsel now to allege in their statement of questions that dependency is not supported by clear and convincing evidence. The trial court further elaborated:

The Master determined, and this Court concludes, that "clear and convincing" evidence was presented to substantiate the claim of the Petition that [E.B.] was a "dependent child". Not only did the Court hear the words of [E.B.], herself, but the Court heard from trained professionals who had spoken with and provided treatment and counseling to [E.B.] as to their findings and conclusions regarding her statements. The Trial Court also had the benefit of weighing corroborative evidence in the nature of [E.B.'s] behavior in the foster home after having been removed from the adoptive home, the diagnosis of her condition as presented by the therapist selected by the adoptive parents, the consistencies of that diagnosis with a child who has been the victim of sexual abuse and the representations of legal counsel for the adoptive parents who states that the adoptive parents agree that the child cannot come home now or in the foreseeable future. Certainly, as applied to

[E.B.], the definition of a "dependent child" cannot be more clearly met.

(Trial Court Opinion at 6.)

¶ 7 As to S.B., the trial court acknowledged that the establishment of his dependency and the necessity for intervention by CYS presented a more complicated and challenging evaluation and finding than with E.B. Judge McBride recognized that counsel for the parents alleged, in their Pa.R.A.P.1925(b) statement of matters complained of on appeal, the court's conclusions were in error as a matter of law and fact. The trial court made clear, however, that the primary findings of dependency as to S.B. were derivative of the character of the abuse and treatment of E.B.

> It should be noted at this juncture that the only factual allegations of abuse, whether sexual or physical or emotional or psychological, involving young [S.B.] were allegations (1) initially related to the sexual abuse of [E.B.] at the hands of the adoptive father; (2) related to adoptive father's psychological control over how [S.B.] would perceive the allegations [E.B.] made, and finally (3) related to allegations made by [E.B.] after removal from the custody of the adoptive parents concerning [S.B.] being induced to help his father get dressed, including putting shoes, socks, pants and belt on his father.

(Trial Court Opinion at 7.)

¶ 8 Counsel for parents argue that case law, supported by the Juvenile Act,[2] does not permit a child to be found dependent merely because a sibling is dependent. Appellants' brief at 19. Quoting *Appeal of F.L.M. and F.M.*, 438 Pa.Super. 409, 652 A.2d 877, 880 (1995), counsel specifically argues "[t]he burden of proof in a dependency proceeding is on the petition-er...who must show [that] the juvenile is without proper parental care, and that such care is not immediately available." *Id.*, quoting *Matter of B.R.*, 408 Pa.Super. 345, 596 A.2d 1120, 1123 (1991). According to this argument, S.B. could not be found dependent due to the master's findings that he had not been the subject of physical or sexual abuse and was doing well in his home, in school, in the community and was safe in his parent's home. The master and the trial court *did* find S.B. to be a dependent child, however, and while there was no clear necessity for removing him from his home, present law requires a finding of dependency which in turn mandates CYS supervision in the home.

¶ 9 The error in appellants' argument and reliance on statutory law and case law dating from 1995 and earlier is that they fail to take cognizance of the federal and state expansion of dependency law promulgated in 1997 and thereafter, which is controlling in this case.

¶ 10 The trial court initiated its discussion of the law applicable to the determination of dependency by citing the Juvenile Act's definition of a dependent child.

> **"Dependent child."** A child who:
>
> (1) is without proper care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental or emotional health or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, ....

42 Pa.C.S.A. § 6302, **Definitions.** A trial court is called upon to apply the facts as it finds them in a particular case to this definition to determine whether a child

---

2. 42 Pa.C.S.A. § 6301 *et seq.*

meets the definition of a "dependent child" by clear and convincing evidence. In finding E.B. dependent, Judge McBride adopted the master's finding number 4:

> That *aggravated circumstances exist* as follows:

> [E.B.] was the victim of physical abuse resulting in sexual violence by the father, [F.B.]. The sexual violence consisted of *"indecent contact"* as defined in 18 Pa.C.S.A. § 3101. The indecent contact consisted of touching [F.B.'s] penis by [E.B.] and repeated touching of [E.B.'s] vagina/genital area on [F.B.'s] arms and/or legs for the purpose of arousing sexual gratification.

(Trial Court Opinion at 8, emphasis supplied.) This finding of aggravated circumstances with regard to E.B. has significant implications in making a determination as to whether or not S.B. is a dependent child.

¶ 11 Current law provides that a dependency petition may be brought and may include an allegation that aggravated circumstances exist. 42 Pa.C.S.A. § 6334.[3] Section 6341, **Adjudication,** requires a court to make and file findings as to whether a child is dependent and to dismiss the petition and discharge the child from detention if it does not find the child to be dependent.[4] Section 6341(c.1), **Aggravated circumstances,** further provides:

If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child is dependent, the court shall also determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunite the family shall be made or continue to be made and schedule a hearing as required in section 6351 [**Disposition of dependent child**] (e) [**Permanency hearings**] (3) (relating to disposition of dependent child).

¶ 12 As detailed above, the county agency and juvenile court in their petition and proceedings pursued the dependency action as to both E.B. and S.B. before the master with a subsequent review of those proceedings before the juvenile judge. As spelled out by the master in his extensive report, following a hearing and testimony taken, both E.B. and S.B. were found to be dependent by clear and convincing evidence. As to E.B., the existence of aggravated circumstances also was found by clear and convincing evidence. By virtue of this finding, the master was able to find aggravated circumstances with regard to S.B. by applying the law of section 6302,

---

3. Relevant portions of 42 Pa.C.S.A. § 6334, **Petition,** provide:

(a) **Contents of petition.**—A petition, which shall be verified and may be on information and belief, may be brought by any person.... It shall set forth plainly:

(1) The facts which bring the child within the jurisdiction of the court and this chapter, with the statement that it is in the best interest of the child and the public that the proceeding be brought and, if delinquency is alleged, that the child is in need of treatment, supervision or rehabilitation.

...

(b) **Aggravated circumstances.**—

(1) An allegation that aggravated circumstances exist may be brought:

(i) in a petition for dependency with regard to a child who is alleged to be a dependent child; ....

4. "After hearing the evidence on the petition the court shall make and file the findings as to whether the child is a dependent child .... If the court finds the child is not a dependent child ... it shall dismiss the petition and order the child discharged from any detention or other restriction...." 42 Pa.C.S.A. § 6341, **Adjudication.**

**Definitions,** which defines "Aggravated Circumstances" as any of the following:

. . .

(2) The child *or another child of the parent* has been the victim of physical abuse resulting in serious bodily injury, *sexual violence* or aggravated physical neglect by the parent.

42 Pa.C.S.A. § 6302 (emphasis added). The section thereafter defines "sexual violence" as

> Rape, indecent contact as defined in 18 Pa.C.S. § 3101 (relating to definitions), incest or using, causing, permitting, persuading or coercing the child to engage in a prohibited sexual act as defined in 18 Pa.C.S. § 6312(a)[5] (relating to sexual abuse of children). . . .

*Id.* Finally, indecent contact is defined in 18 Pa.C.S. § 3101, **Definitions,** as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." *Id.*

¶ 13 The major thrust for the emphasis on "aggravated circumstances" came from federal legislation which took a broader view of the needs of dependent children than that which was previously held. Pursuant to the requirements of the Federal Adoption and Safe Families Act of 1997 (hereinafter ASFA),[6] Pennsylvania amended its Juvenile Act, effective January 1, 1999. The various citations to aggravated circumstances detailed above are derived from the ASFA and expand its definition of dependency to include children who are in abusive families and who, while not themselves seriously abused, are "another child of a parent when the sibling has been abused or subject to sexual violence." Act 1998–126 added the definitions of "aggravated circumstances", "aggravated physical neglect" and "sexual violence" to the Juvenile Act and added subsection (10) to the definition of a dependent child as one who

5. 18 Pa.C.S.A. § 6312. **Sexual abuse of children**

(a) **Definition.**—As used in this section, "prohibited sexual act" means sexual intercourse as defined in section 3101 (relating to definitions), masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction.

6. The legislative history of the Adoption and Safe Families Act provides in pertinent part as follows:

There seems to be a growing belief that Federal statutes, the social work profession, and the courts sometimes err on the side of protecting the rights of parents. As a result too many children are subjected to long spells of foster care or are returned to families who reabuse them.

The bipartisan group that wrote this legislation recognized the importance and essential fairness of the reasonable efforts criterion. What is needed is not a wholesale reversal of reasonable efforts or of the view

that government has a responsibility to help troubled families solve the problems that lead to child abuse or neglect. Rather than abandoning the Federal policy of helping troubled families, what is needed is a measured response to allow States to adjust their statutes and practices so that in some circumstances States will be able to move more efficiently toward terminating parental rights and placing children for adoption. Thus, the Committee bill would require States to define "aggravated circumstances," such as chronic abuse, or sexual abuse, in which States are allowed to bypass the Federal reasonable efforts criteria and instead would be required to make efforts to place the child for adoption. In addition, States would be required to bypass reasonable efforts to provide services to families if the parent has another child for whom parental rights were involuntarily terminated.

House Report No. 105–77, April 28, 1977, Cong. Record Vol. 143 (1997), "Purpose and Scope," at 8.

is born to a parent whose parental rights with regard to another child had been involuntarily terminated under 23 Pa.C.S. § 2511 (relating to grounds for involuntary termination) within three years immediately preceding the date of birth of the child and the conduct of the parent poses a risk to the health, safety or welfare of the child.

42 Pa.C.S.A. § 6302. **Definitions.** The rationale for such expansion of the criterion for alleging abuse is clearly detailed in the Congressional Record. See footnote 6, *supra.*

¶ 14 Finally, although the Commonwealth alleges the failure to file objections or request a rehearing before the juvenile judge in accordance with local rules results in waiver of those matters complained of in the statement of questions filed by appellants, we conclude it does not, unless a rehearing is ordered by the trial judge. The findings and recommendations of the master become the findings and Order of the court when confirmed in writing by Judge McBride. 42 Pa.C.S.A. § 6305, **Masters,** (d) **Rehearing before judge.** Section 6305 does not require that exceptions be filed or a rehearing requested in order to appeal from a decision of a master. *In re A.M.,* 365 Pa.Super. 516, 530 A.2d 430, 431 (1987).

¶ 15 In keeping with our standard and scope of review, we look to the fact-finding role of the trial judge and accord him the widest leeway in determining credibility and factual findings because of his opportunity to weigh and observe the parties during trial. We are not, however, bound by the trial court's inferences, deductions or conclusions therefrom and must order what justice dictates. *In re C.J.,* 729 A.2d 89, 92 (Pa.Super.1999).

¶ 16 Here, the trial court had the unenviable responsibility of evaluating the testimony of parents, children, expert witnesses, CYS officials and other interested parties. The factual determinations had to be melded with intricate legal concepts, which balance the rights of the parents to care for and control their children while protecting the welfare and safekeeping of the children to assure them a wholesome and adequate life. The master and the trial judge carefully reviewed the evidence and testimony presented and concluded that there was clear and convincing evidence to determine E.B. and S.B. to be dependent children. As to E.B., there was evidence that reached the level of clear necessity and required her placement outside of her home and into foster care. While S.B. was not deemed to be abused in the home, his condition and the dysfunction of the home are such that the court deemed it necessary that CYS supervise the home. For the reasons detailed in the trial court Opinion and thoroughly reviewed here, we agree with those decisions.

¶ 17 As concluded by the trial court, although S.B. was returned to and permitted to remain with his adoptive parents, the clear and convincing evidence leads to the inescapable conclusion that he and his family continue to be in need of supervision and intervention from the State Commonwealth in the parent-child relationship, and the juvenile is dependent and in need of continuing treatment and supervision.

¶ 18 Orders affirmed.