J-A27043-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

IN THE INTEREST OF: H.H., A/K/A : IN THE SUPERIOR COURT OF
H.P., A MINOR : PENNSYLVANIA
:
:
:
:
APPEAL OF: S.V., MOTHER : No. 893 WDA 2017

Appeal from the Order May 30, 2017
in the Court of Common Pleas of Beaver County,
Juvenile Division at No(s): CP-04-DP-0000001-2017

BEFORE: BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: FILED MARCH 28, 2018

S.V. ("Mother") appeals from the Order (hereinafter, the "Dependency

Order") adjudicating her minor son, H.H. a/k/a H.P. ("Child") (born in January

2017), dependent under the Juvenile Act, see 42 Pa.C.S.A. § 6301, et seq.

("the Act"), and the Order finding that aggravated circumstances exist against

Mother (hereinafter, the "Aggravated Circumstances Order"), respectively.

We affirm.[1]

The trial court set forth the relevant factual background and procedural

history underlying this appeal in its Opinion, which we incorporate as though

fully set forth herein. See Trial Court Opinion, 7/7/17, at 1-5.[2]

_____

[1] Although the trial court judge in the instant case, the Honorable Deborah
Kunselman, is presently a member of this Court, she did not take part in this
panel's decision.

[2] Child's father, N.R., neither filed an appeal from the Dependency Order or
the Aggravated Circumstances Order, nor is he a party to the instant appeal.

On May 30, 2017, the trial court entered the Dependency Order, and, the next day, entered the Aggravated Circumstances Order. Mother timely filed a Notice of appeal and a Concise Statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Mother now presents the following issues for our review:

1.) Did the Trial Court err in finding … [C]hild dependent, based in particular upon a finding of a prior dependency involving a sibling to … [C]hild, and based upon the aggravating circumstances involving a previous dependency action involving a sibling to … [C]hild, where … [C]hild was not born until nine (9) months following the circumstances of the previous case?

2.) Was Mother denied procedural due process where she was not provided with notice of the intent to seek aggravated circumstances against her regarding … [C]hild?

3.) Did the Trial Court abuse[] its discretion in ordering that no efforts are to be made to preserve the family and reunify … [C]hild with Mother[,] under its [Aggravated Circumstances] Order[,] … by finding aggravating circumstances, where Mother voluntarily terminated her parental rights in a prior case?

Mother's Brief at 4.

[T]he standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. We review for [an] abuse of discretion[.]

In Interest of: L.Z., 111 A.3d 1164, 1174 (Pa. 2015) (citation and quotation marks omitted).

The definitions provision of the Act, section 6302, defines a "dependent child," in relevant part, as a child who

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302(1).

This Court has clarified the definition of "dependent child" further:

The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

In re G., T., 845 A.2d 870, 872 (Pa. Super. 2004) (quotation marks and citations omitted); see also In re J.C., 5 A.3d 284, 289 (Pa. Super. 2010).

A court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

In re D.A., 801 A.2d 614, 617 (Pa. Super. 2002) (en banc).

Regarding the disposition of a dependent child, subsections 6351(e), (f), (f.1), and (g) of the Act provide a trial court with the criteria for its permanency plan for the subject child, stating, in pertinent part, as follows:

(e) Permanency hearings.

(1) The court shall conduct a permanency hearing for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for

the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child. ...

(2) If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child has been adjudicated dependent, the court shall then determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the child's parent, guardian or custodian or to preserve and reunify the family shall be made or continue to be made[,] and schedule a hearing ....

* * *

(f) Matters to be determined at permanency hearing. — At each permanency hearing, a court shall determine all of the following:

  (1)  The continuing necessity for and appropriateness of the placement.

  (2)  The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

  (3)  The extent of progress made toward alleviating the circumstances which necessitated the original placement.

  (4)  The appropriateness and feasibility of the current placement goal for the child.

  (5)  The likely date by which the placement goal for the child might be achieved.

(5.1)  Whether reasonable efforts were made to finalize the permanency plan in effect.

  (6)  Whether the child is safe.

* * *

- 4 -

(9) If the child has been in placement for at least 15 of the last 22 months[,] or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

(i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

(ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

(iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

* * *

(f.1) Additional determination. — Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:

(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(3) If and when the child will be placed with a legal custodian in cases where return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(4) If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

\* \* \*

(f.2) Evidence. — Evidence of conduct by the parent that places the health, safety or welfare of the child at risk, including evidence of the use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk, shall be presented to the court by the county agency or any other party at any disposition or permanency hearing whether or not the conduct was the basis for the determination of dependency.

(g) Court order. — On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(e)-(g).

Further, the Act defines "aggravated circumstances" as including, inter alia, the following: "The child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent." 42 Pa.C.S.A. § 6302 (emphasis added); see also id. (defining "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent

disfigurement or protracted loss or impairment of the function of any bodily member or organ.").

> If the court finds[,] from clear and convincing evidence[,] that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home[,] or to preserve and reunify the family[,] shall be made or continue to be made[,] and schedule a hearing as required in section 6351(e)(3) (relating to disposition of dependent child).

42 Pa.C.S.A. § 6341(c.1).

In her first issue, Mother argues that the trial court incorrectly determined that Child was a "dependent child," based upon a prior finding of dependency and aggravated circumstances involving Mother's older child, C.H., where the allegations concerning the abuse of C.H. preceded the birth of Child by more than nine months. Mother's Brief at 7. Mother further complains that the trial court erred in determining that a single instance of drug use by Mother in August 2016, approximately five months prior to Child's birth, required an adjudication of dependency. Id. at 9.

Moreover, Mother asserts that neither a prior adjudication of dependency concerning a sibling, nor a prior finding of aggravated circumstances, is included within the ten enumerated reasons for finding a child dependent under 42 Pa.C.S.A. § 6302. See Mother's Brief at 11. Citing In the Interest of R.T., 592 A.2d 55, 61 (Pa. Super. 1991), and In the Interest of Theresa E., 429 A.2d 1150, 1156 (Pa. Super. 1981), Mother asserts that a child should not be found dependent merely because a sibling is dependent. See Mother's Brief at 11-12.

In its Opinion, the trial court cogently addressed Mother's claims, distinguished the cases she relies upon, and determined that there was clear and convincing evidence that Child was a "dependent child[,]" under subsection 6302(1), supra, for being without proper parental care and control. See Trial Court Opinion, 7/7/17, at 5-9. We agree with the trial court's rationale and determination, and therefore affirm on this basis as to Mother's claim. See id.[3]

As an addendum, we note that Mother also contends in her first issue that CYS's Petition to find Child dependent (the "dependency Petition") did not allege Mother's prior substance abuse issues as the basis for the dependency determination. See Mother's Brief at 9-10. Mother argues that, therefore, any testimony regarding her prior drug use was not properly before the trial court in considering whether to adjudicate Child dependent. See id. Mother complains that the testimony at the dependency hearing, which was offered to imply that her substance abuse issues from the time prior to August 2016, as a basis for finding Child dependent, was a substantial change in the type of conduct alleged in the dependency Petition. Id. She claims that she lacked notice of this change, and that it constituted a fundamentally unfair procedure against her. Id. Mother argues that the trial court's consideration of her prior

_____

[3] Moreover, contrary to Mother's claim in her brief, the trial court's Opinion did not improperly rely on the decision in In the Interest of S.B., 833 A.2d 1116 (Pa. Super. 2003), nor is that case distinguishable for the reason she asserts. See Mother's Brief at 12-13; Trial Court Opinion, 7/7/17, at 7-9.

drug use violated her due process rights, and that she raised this issue prior to the closure of the record. Id. Mother relies on In the Interest of R.M., 790 A.2d 300 (Pa. 2002), to support her argument. Mother's Brief at 9-10; see also R.M., 790 A.2d at 305-07 (where the trial court determined that the child was a "dependent child" based upon certain issues and conduct of the parents not alleged in the agency's dependency petition, holding that a due process violation occurred where the parents were not given adequate notice of such allegations).

"Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." In re J.N.F., 887 A.2d 775, 781 (Pa. Super. 2005).

Unlike the circumstances in R.M., supra, Mother had adequate notice that CYS requested the trial court to find Child dependent based on the lack of proper parental care or control. The primary issues concerning Mother's involvement with CYS, which could result in Child being deemed without proper parental care or control, were her ongoing struggle with substance abuse, and her recent prior history of abusing C.H. The dependency Petition, filed at Child's birth in April 2017, recited concerns regarding (1) Mother's purported drug use during her pregnancy with Child, specifically, in the summer of 2016; (2) a positive result for drugs on August 18, 2016; and (3) her prior history of abusing C.H. We, thus, discern no merit to Mother's argument that she lacked notice and was unable to defend herself against the

dependency Petition. Accordingly, Mother's first issue does not entitle her to relief.

In her second issue, Mother argues that the trial court deprived her of due process by failing to give her notice of CYS's intent to seek a finding of aggravated circumstances, and alleges that CYS was improperly allowed to proceed upon an oral Motion for a finding of aggravated circumstances. See Mother's Brief at 15-17.

The trial court concisely addressed Mother's claim in its Opinion, which we incorporate herein by reference. See Trial Court Opinion, 7/7/17, at 9.

The record confirms that Mother had adequate notice, an opportunity to be heard, and the chance to defend herself in an impartial tribunal having jurisdiction over the matter, with regard to the allegations of aggravated circumstances against her. Thus, we conclude that the trial court did not violate Mother's due process rights in allowing CYS to present the aggravated circumstances Petition against her. See In re J.N.F., 887 A.2d at 781. Moreover, there is clear and convincing evidence in the record to support the trial court's finding that "aggravated circumstances" exist under subsection 6302(2), because another child of Mother, C.H., had been the victim of Mother's physical abuse that resulted in serious bodily injury. See Trial Court Opinion, 7/7/17, at 9-10. Accordingly, Mother's second issue lacks merit.

In her third and final issue, Mother argues that the trial court abused its discretion, concerning the Aggravated Circumstances Order, in directing that

no efforts were to be made to preserve the family and reunify Child with Mother, where

(1) Mother voluntarily terminated her parental rights in the prior case involving C.H;

(2) Mother and Child were drug free; and

(3) Child was taken from her within a day of his birth, having suffered no abuse or injuries.

See Mother's Brief at 17-18.

In its Opinion, the trial court addressed Mother's claim, and we incorporate its cogent analysis herein. See Trial Court Opinion, 7/7/17, at 10-11. For the reasons set forth previously in this Memorandum, we discern no abuse of discretion in the trial court's determination that Child was dependent, and that aggravated circumstances existed. Thus, the trial court properly exercised its discretion in ruling that no efforts needed to be made to reunify Child with Mother. See 42 Pa.C.S.A. § 6341(c.1); see also In re A.H., 763 A.2d 873, 878 (Pa. Super. 2000) (stating that "[w]hen the court finds aggravated circumstances exist, it is well within its discretion to order the cessation of reunification services.").

Accordingly, as none of Mother's claims of error entitle her to relief, we affirm the Dependency Order and the Aggravated Circumstances Order.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/2018

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY
P E N N S Y L V A N I A
JUVENILE DIVISION

In the Interest of:

H.H., a.k.a.
H.P., a Minor
DOB: 1/ /2017

Juv. No. 5-2017

CP-4-DP-0000001 of 2017

FID: 04-FN-00008-2016

## 1925 (a) OPINION

D. KUNSELMAN, J.                                          JULY 7, 2017

The Court held a hearing on March 21, 2017 and April 4, 2017 to adjudicate dependency of the minor child, H.H., and to determine whether aggravated circumstances exist. Both parents contested dependency and aggravated circumstances. At the conclusion of the hearing, the Court took the matter under advisement and requested the parties to brief certain legal issues. Ultimately, the Court concluded that the minor child was dependent and that aggravated circumstances existed. Mother appeals these decisions.

## FACTS

This case began in Beaver County, when CYS filed an Emergency Motion for Protective Custody of H.H., shortly after he was born on January   , 2017. The child was taken into protective custody on January  , 2017, and placed with A    Y    , a kindship foster home. Ms. Y    is the paternal grandmother of H.H.'s half sibling, C.H., whom she adopted following a separate dependency and aggravated circumstances case. A shelter care hearing was held on January 9, 2017. The child remained in protective care, with supervised visits offered to Mother.

Approximately six months prior to the birth of H.H., the Court found Mother was the perpetrator of physical abuse resulting in serious bodily injury to her other son, C.H., who was approximately two year's old. C.H. was taken to Children's Hospital, following a tip to CYS, in April 2016. He had very serious visible bruising on his face. While being treated, it became clear that in addition to multiple bruising and abrasions on his body, he had internal injuries as well. He suffered from a large duodenal hematoma, which was the result of serious blunt trauma. The doctors determined C.H.'s injuries were caused by physical child abuse on multiple occasions, and that the adult's in his life failed to keep him safe. The doctors indicated that these injuries would have been very painful and apparent to a reasonable caretaker that he was injured. C.H. was adjudicated dependent, aggravated circumstances were found to exist, and Mother voluntarily terminated her parental rights to C.H.

CYS filed a formal petition for dependency when H.H. was born, due to findings of this Court with respect to the child's half sibling C.H, and also because Mother did not participate in any parenting services, and admitted to using drugs during her pregnancy with H.H.

On the day of the shelter care hearing, January 9, 2017, only a few days after the birth of H.H., Mother was scheduled for a criminal trial in Beaver County. She ultimately pleaded guilty to a felony count of endangering the welfare of a child and to simple assault for the abuse of C.H. She was sentenced to jail for a period of approximately 3 months. Prior to the shelter care hearing, CYS presented its petition for aggravated circumstances with respect to Mother, concerning H.H., and the court scheduled a hearing for February 7, 2017. Notice of this petition was mailed to Mother on January 6, 2017.

On February 7, 2017, the Court continued the adjudication of dependency and aggravated circumstances hearing for H.H. until March 21, 2017, because CYS was trying to determine the identity of the Father. At first, E.P. was thought to be the father, but a DNA test proved otherwise. Then, in March 2017, N.R. was determined to be the Father of H.H. through genetic testing.

Day one of the dependency/aggravated circumstances hearing was held, as scheduled, on March 21, 2017. Mother admitted that she was incarcerated at the time of the hearing due to abuse toward her two year old son, C.H. She testified, "I am incarcerated for what had happened. I have the charges on me. I took the charges. I took the plea. I took the child endangerment. I took the simple assault." (Trial.Record 62).

She also testified that she was clean since the end of August, and that there was a positive drug screen on her on August 18, 2106 (T.R. 59, 62, 64), which means she did use drugs during the initial months of her pregnancy with H.H.

She wanted H.H. to go with his Father while she was incarcerated. (T.R. 60). She noted there were no criminal charges against Father. She denied ever hurting C.H., and believed it was her brother, and not Father, who caused the injuries to C.H. (T.R. 71-72). However, she was not always there when Father was alone with C.H. (T.R. 73)..

Initially, following the testimony, the Court was inclined to award custody of the minor, H.H., to Father in this case, and close the dependency action for H.H. Father testified that he is 28 years old and has a 5 year old son. He shares custody of his son with the child's mother; there is no formal arrangement for custody. (T..R. 74, 76-77). He is employed by his brother doing construction work. (T.R. 78). He lives with his

3

mother in Rochester, and there is room for H.H. to reside with them. (78-80). He was undergoing drug and alcohol treatment. (T.R. 75). He had a relapse for heroin a year ago. (T.R. 89-89). He was on probation, but had a hearing coming up where he thought everything would be resolved. (T.R. 76). He was willing to do a parenting evaluation and allow CYS to speak with his drug and alcohol counselor. (T.R. 82-83). He was excited and was ready to be a full-time parent for H.H. (T.R. 85). He had transportation available for the child's medical appointments and all the things he would need to take care of him. (T.R 89-90). He stated that the last time he was in active use of drugs was the relapse a year ago, otherwise he would have been clean for two years. (T.R. 88). He indicated that he takes Suboxone. (T.R. 88).

Prior to ruling on the adjudication, the Court wanted Father to take a drug test and ordered the parties to submit a trial brief on the issue of dependency for one child as it relates to a prior finding of dependency for a sibling.

At the conclusion of the hearing, as directed by the Court, Father went to the Adult Probation office in the courthouse for his drug test. He tested positive for THC, and negative for the Suboxone which he was prescribed. This gave rise to on-going drug and alcohol concerns.

Upon a motion from one of the parties, the Court reconvened the hearing on dependency and aggravated circumstances, a few weeks later, on April 4, 2017, due to the results of Father's drug test. On day two of the hearing, the adult probation officer, C.J. Mavero, who administered Father's drug test, testified about the results of the test.

Father failed to appear for day two of the hearing. His attorney claimed that, according to Father's mother, Father was too sick to appear. Father was available by telephone, and the Court called from the courtroom to obtain his testimony. His medical

4

records for prescriptions and the positive drug test did not correlate, leaving the Court to have serious concerns about his drug use, and his ability to care for H.H.

Based on Mother's history, Father's positive drug screen, and after reviewing the briefs submitted by the parties, the Court entered its decision on both the adjudication and the aggravated circumstances on May 15, 2017. (Due to clerical circumstances at Juvenile Services office, the orders were not sent to counsel until the end of May). The Court found H.H. to be dependent and found aggravated circumstances with respect to Mother.

Father failed to attend the first permanency review hearing on June 13, 2017. It was noted at that hearing that Father had not visited with the child. His mother, paternal grandmother, also failed to appear at this hearing or offer to take the child in her care.

As previously noted, Mother was incarcerated at the time of the initial adjudication hearing. She was convicted of abuse of her other child. She was not ready, willing or able to care for H.H.. Instead, she wanted the child to go with Father. That was not possible given Father's positive drug screen and lack of credibility regarding his current drug use.

Mother filed the appeal to this court's decisions on June 16, 2017.

## ANALYSIS OF ISSUES RAISED ON APPEAL

Mother has raised three issues on appeal with respect to the Court's decision in this matter. The Court will discuss each of these issues.

1. *The trial court did not err in finding the minor child dependent. There was more than sufficient evidence to support the finding of dependency.*

5

The Court concluded that CYS met its burden of proof for dependency by clear and convincing evidence that the "child is without proper care of control, subsistence, education as required by law, or other care or control necessary for his physical, mental or emotional health, or morals." 42 Pa. C.S. §6302.

At the time the petition was filed, Mother had been found responsible for serious bodily injury to her other son, C.H. These injuries were life-threatening and if left untreated for even a few more days, C.H. might have died. Since the abuse was discovered, and CYS became involved with Mother and C.H., Mother failed to follow up with any parenting classes or drug and alcohol evaluation, although she attended a drug and alcohol program while she was incarcerated at the Beaver County jail. There were no precautions taken to ensure that H.H. would not suffer the same harm as C.H. Additionally, at the time of the hearing, Mother was incarcerated for abuse C.H. Thus, she was not able to care for H.H.

In terms of Father, as stated above, the Court was prepared to have H.H. go home with him and close out the dependency case until he tested positive for drugs. His testimony regarding his current drug use lacked credibility and concerned the Court. This Court concluded that, presently, he was in no condition to be a full-time parent to H.H. Sadly, he has not been involved with the agency, since the initial hearing in this matter.

Mother's counsel argues that case law does not permit a child to be found dependent merely because a sibling is dependent. Mother sites two cases, which are factually different from the case at hand. In both of those cases, the sibling was not the victim of abuse by the parent.

6

First, Mother relies on the decision in In the Interest of Theresa E., 429 A.2d 1150, 1153 (Pa. Super. 1981) (superseded by statute on other grounds). There, the lower court noted that the two older children were not physically ill or undernourished, and they were not abused physically by their parents. Nonetheless, the lower court determined that they were dependent along with a third child, an infant. No testimony was offered about the dependency of the infant; the lower court concluded he was dependent solely on the basis that his siblings were dependent and the children should not be separated. Id. at 1156. On appeal, the Superior Court noted that there was virtually no evidence about the youngest sibling, and questionable evidence regarding the other two children. The court reversed the finding of dependency as to all three children and remanded for a further hearing. Id. at 1159.

Second, Mother relies on In the Interest of R.T. and A.T, 592 A.2d 55 (Pa. Super. 1991). There, the court observed that the younger child, R.T., was not physically abused, and the perpetrator of the abuse on the older child, A.T., could not be identified. Under those facts, the appellate court reversed the finding of dependency as to both children. Id. at 61.

As argued by the GAL, this case is more comparable to In the Interest of S.B., 833 A.2d 1116 (Pa. Super. 2003), which, coincidentally, is another Beaver County case. In that case, the parents also argued that one child should not be dependent merely because the sibling was adjudicated dependent. The court noted that "the error in appellants' argument and reliance on statutory law and case law dating from 1995 and earlier is that they fail to take cognizance of the federal and state expansion of dependency law promulgated in 1997 and thereafter, which is controlling in this case."

7

Id. at 1120. Here, we note that Mother also relies on cases that pre-date the current dependency law.

*DEPENDENT*

In the Interest of S.B., the court found a younger sibling to be defendent, based on a finding of abuse by a parent to S.B.'s sibling, E.B. The facts indicated that E.B. was the victim of physical abuse resulting from sexual violence by her father, F.B. The sexual violence consisted of "indecent contact" as defined in 18 Pa.C.S.A. § 3101. The indecent contact consisted of E.B. being forced to touch her father's penis and repeated touching of E.B.'s vagina/genital area on F.B.'s arms and/or legs for the purpose of arousing sexual gratification. Based on the facts concerning abuse to E.B., the trial court found aggravated circumstances existed with regard to E.B. The trial court further concluded that its finding of aggravated circumstances with regard to E.B. had "significant implications" in making a determination as to whether S.B. was a dependent child. Id. at 1121.

The court in S.B., concluded that there was clear and convincing evidence that E.B. was dependent and that aggravated circumstances existed to warrant her placement in foster care, outside the home. While S.B, was not deemed to be abused in the home, his condition and the dysfunction of the home were such that the court deemed it necessary for CYS to supervise the home, and also found him to be a dependent child. Id. at 1123. The Superior Court agreed with the trial court's determination as to both children, and affirmed the finding of dependency and aggravated circumstances.

Here, the facts before us are similar. Mother was criminally convicted for the abuse to the older child, C.H. The abuse, including serious bruising and an internal hematoma, was so severe that the child almost died. Additionally, the Court's finding of

8

aggravated circumstances and abuse to the older child, occurred only six months prior to the birth of H.H. Mother received no services which would indicate that her behavior or mindset has changed. She did not receive any parenting or drug and alcohol services, which were approved by CYS, although she did attend drug and alcohol services in the jail. Under these facts, we believe CYS met its burden and proved by "clear and convincing evidence" that H.H. is a dependent child.

## 2. *The trial court did not err in finding aggravated circumstances.*

Contrary to Mother's contention, that she did not receive notice of CYS's intent to seek aggravated circumstances in this case, the facts indicate otherwise. CYS gave notice on January 6, 2017 of its intention to file an aggravated circumstances petition. It presented the petition on January 9, 2017, at the same time as the shelter care hearing. The hearing on the aggravated circumstances and the adjudication of dependency, were both scheduled for February 7, 2017. On that date, a motion to continue both hearings was presented and was granted by the Court, because CYS was still attempting to verify the identity of H.H's biological father. The continuation order clearly states that both the adjudication and the aggravated circumstances hearing were continued until March 21, 2017.

Moreover, the aggravating circumstances, in this case, could not be clearer. The statute defines "aggravated circumstances," in part, as follows:

> (2) The child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent.

> * * *

> (5) The parental rights of the parent have been involuntarily terminated with respect to a child of the parent.

9

42 Pa. C.S. § 6302.

Because Mother's rights with respect to another child were voluntarily terminated, we agree that section (5) of the definition of "aggravated circumstances" does not apply.

However, section (2) applies squarely to this case. Mother's other child, C.H., was the victim of serious bodily injury caused by her neglect. As such, the Court did not err when it found aggravated circumstances exist with respect to Mother's other child, H.H.

### 3. The trial court did not abuse its discretion in ordering that no efforts are to be made to preserve the family and reunify the mother and the minor child, where mother voluntarily terminated her rights in a prior case.

Mother complains on appeal that the Court should allow efforts by CYS to reunify Mother with her child and that failure to do so was an abuse of this Court's discretion. We disagree. Mother's first child was very badly abused, and no one caring for him sought medical treatment, until CYS became involved. If not for a tip to CYS, and follow-up medical treatment, the child could have died from his injuries. This was significant enough for the Court to exercise its judgment to determine that no efforts need to be made to preserve the family and reunify the Mother and the minor child, especially when Mother made no efforts and received no services between the finding of abuse to C.H and the birth of H.H., which would lead the Court to believe that she is a changed person. The fact that she voluntarily terminated her rights with respect to her other child does not automatically wipe the slate clean and give her another chance to be a parent. Her conduct with respect to C.H. was extreme. Moreover, although she pleaded guilty to child endangerment and simple assault and she was incarcerated for these crimes, she continues to deny any responsibility for the harm to her son. Instead, she claims her brother was the perpetrator of the harm. Unfortunately for Mother, her

10

own decisions, i.e. her actions and inactions, led the Court to its decision with respect to H.H. She has no one to blame but herself.

The goal, with respect to Father in this case, is reunification. However, Father must step up his efforts to be a parent to H.H. over the next several months, or the Court will be forced, under the Adoption and Safe Families Act, to take further steps toward permanency for H.H.

BY THE COURT

_Deborah A. Kunselman_
J.

11