J-A04016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: X.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: Z.F. AND W.F., FATHER AND MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1149 MDA 2022 |

Appeal from the Order Entered August 10, 2022
In the Court of Common Pleas of Lancaster County Juvenile Division at
No(s): CP-36-DP-0000019-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: O.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: Z.F. AND W.F., FATHER AND MOTHER | : | |
| | : | |
| | : | |
| | : | No. 1150 MDA 2022 |

Appeal from the Order Entered August 10, 2022
In the Court of Common Pleas of Lancaster County Juvenile Division at
No(s): CP-36-DP-0000020-2022

BEFORE: STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.:                                **FILED: MARCH 8, 2023**

Z.F. ("Father") and W.F. ("Mother") (collectively, "Parents") appeal from the August 10, 2022 orders[1] that adjudicated their children, X.F. and O.F. (collectively, "Children"), dependent and found Parents to be perpetrators of child abuse against O.F ("Baby"). Upon careful review, we affirm.

---

[1] The Orders are dated July 14, 2022, but the trial court did not docket them until August 10, 2022.

In its Opinion, the trial court set forth the relevant factual and procedural history of this case and we adopt its detailed recitation for purposes of this appeal. *See* Trial Ct. Op., 9/13/22, at 1-8. In sum, on January 9, 2022, Parents were living in a house with one-year-old X.F., one-month-old Baby, and Father's parents ("Paternal Grandparents"), who assisted in taking care of Children, when Baby became lethargic. Parents took Baby to an urgent care facility, and, upon examination, physicians directed Baby to be transported to Hershey Medical Center via ambulance. Upon arrival, Baby continued to be lethargic, presented with a firm and bulging fontanelle, and had visible bruising on his abdomen, left shoulder, left arm, and left flank. Baby had retinal hemorrhages through the entire retina of both eyes, which were too numerous to count. A CT scan revealed blood in and around the brain and, most concerning, a midline shift, which is a life-threatening condition where one side of the brain is pushed over by bleeding on the outside of the brain. Baby underwent emergency neurosurgery to relieve the pressure on his brain. Surgeons discovered that part of Baby's brain tissue was necrotic and performed a partial lobectomy to remove the dead parts of his brain. Post-surgery MRI and MRV study results indicated that all of Baby's blood vessels and arteries were intact, and there was no sign of arterial aneurysm. However, Baby suffered permanent brain damage because of the blood in and around his brain.

Lori Frasier, M.D., the director of the Hershey Medical Center Child Protection team, was on call when Baby was transported to the emergency

room and consulted on the case. Dr. Frasier utilized Baby's medical records, x-rays, brain scans, blood work, and other reports to perform an assessment of whether child abuse occurred. In the Child Protection Team Inpatient Consultation Report (the "Report"), Dr. Frasier concluded that Baby's injuries were the result of inflicted bruising and severe abusive head trauma, including shaking. The Report also indicated that the Emergency Department certified Baby as a near fatality.

On the same day, the Lancaster County Children and Youth Social Service Agency (the "Agency") received a report alleging that Baby had suffered non-accidental head trauma.

On January 10, 2022, an Agency caseworker met with Parents to develop a safety plan for Baby, who remained in critical condition, and to question Parents regarding Baby's injuries. Parents provided information that, on January 8, 2022, Baby fed and slept normally. Likewise, on January 9, 2022, Baby ate a normal amount during his 10:30 AM feeding. However, that afternoon while Baby was in the care of Paternal Grandmother and parents were at the grocery store, Baby ate less than normal. Baby became increasingly lethargic throughout the day and Parents transported him to urgent care. Neither Parents nor Paternal Grandparents could explain Baby's injuries.

Also on January 10, 2022, X.F. underwent a skeletal and physical exam which did not reveal any past or present injuries. On the same day, pursuant to a safety plan, the Agency placed X.F. in the care of his paternal aunt. On

January 26, 2022, Baby was also discharged to the care of his paternal aunt. During this time, Parents and Paternal Grandparents ceased communication with the Agency and refused to answer additional questions. After investigation, the Agency indicated Parents and Paternal Grandparents as perpetrators of child abuse against Baby.

On February 9, 2022, upon consideration of the Agency's shelter care applications, the trial court granted the Agency temporary legal and physical custody of Children. On the same day, the Agency filed dependency petitions alleging that both Children were without proper parental care and control and alleging that Baby was the victim of child abuse.

The trial court held hearings on May 5, 2022, and July 14, 2022. The Agency presented testimony from Dr. Frasier, an expert in child abuse pediatrics, and Joshua Robinette, an Agency caseworker supervisor. Parents presented testimony from Joseph Scheller, M.D., an expert in pediatric neurology, neurology, and neuroimaging, and Natalie Kecki, who is married to Father's brother.

In sum, Dr. Frasier and Mr. Robinette testified to the above events. Additionally, Dr. Frasier testified that Baby did not have a burst aneurysm because the bleeding did not come from the base of Baby's brain. Dr. Frasier concluded that Baby suffered abusive head trauma due to violent shaking, possibly with impact, based upon Baby's retinal hemorrhages and his massive bleeding.

Dr. Scheller testified that, in his opinion, Baby suffered from a burst aneurysm on January 9, 2022, causing Baby to become lethargic and pale. Dr. Scheller testified that an artery in Baby's brain burst and sprayed blood in Baby's brain disrupting the circulation, and that such a condition is life-threatening. Dr. Scheller opined that Baby suffered from a medical condition rather than child abuse.

Ms. Kecki testified that she has known Father for 14 years and met Mother a few years ago when Parents married. Ms. Kecki stated that she saw Parents and X.F. often. Ms. Kecki described Father as attentive, kind, and playful with X.F. and Mother as very nurturing and attentive with X.F. Ms. Kecki has never seen Father hit, shake, throw, or injure X.F.

On August 10, 2022, the trial court adjudicated Children dependent. Additionally, the court found that Baby was the victim of child abuse because Parents and Paternal Grandparents caused bodily injury to Baby through a recent act or failure to act.

Parents timely appealed. Both Parents and the trial court complied with Pa.R.A.P. 1925.

Parents raise the following issues for our review:

1. Did the trial court abuse its discretion and/or err as a matter of law in adjudicating [Baby] dependent and a victim of child abuse by ignoring expert testimony and evidence directly refuting the allegations as set forth by the Agency and failing to make a credibility determination on said testimony and evidence?

2. Did the trial court abuse its discretion and/or err as a matter of law in adjudicating X.F. dependent by ignoring expert

testimony and evidence directly refuting the allegations as set forth by the Agency and failing to make a credibility determination on said testimony and evidence?

3. Did the trial court abuse its discretion and/or err as a matter of law in adjudicating X.F. dependent as the Agency failed to present any evidence, let alone prove by clear and convincing evidence, that X.F. was dependent independent from [Baby]?

Parents' Brief at 4.

We review findings in a dependency case for an abuse of discretion. *In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). This Court is required to accept the findings of fact and credibility determinations of the trial court if the record supports them, but not required to accept the lower court's inferences or conclusions of law. *Id.* "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *Interest of T.G.*, 208 A.3d 487, 490 (Pa. Super. 2019) (citation omitted). Notably, "we are not in a position to reweigh the evidence and the credibility determinations of the trial court." *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

To adjudicate a child dependent, a trial court must determine by clear and convincing evidence that the child, *inter alia*, "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." *In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013) (citing 42 Pa.C.S. § 6302). Further, "[a] determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or

other custodian that places the health, safety or welfare of the child at risk[.]" 42 Pa.C.S. § 6302. Clear and convincing evidence is defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *A.B.*, 63 A.3d at 349 (citation omitted).

The overarching purpose of the Juvenile Act is "[t]o preserve the unity of the family whenever possible[.]" *Id.* (quoting 42 Pa.C.S. § 6301(b)(1)). Accordingly, "a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available." *In Interest of R.T.*, 592 A.2d 55, 57 (Pa. Super. 1991) (citation omitted). This Court has defined "proper parental care" as care which is "geared to the particularized needs of the child and [,] at a minimum, is likely to prevent serious injury to the child." *A.B.*, 63 A.3d at 349 (citation omitted).

When adjudicating a child dependent, a court may find a parent or caregiver to be the perpetrator of child abuse as defined by the Child Protective Services Law ("CPSL"). *Interest of C.B.*, 264 A.3d 761, 770 (Pa. Super. 2021) (*en banc*), *appeal denied*, 270 A.3d 1098 (Pa. 2022). The petitioning party must demonstrate the existence of child abuse by clear and convincing evidence. *In re L.Z.*, 111 A.3d at 1174. The CPSL defines "child abuse" to include, in relevant part, "intentionally, knowingly or recklessly [c]ausing bodily injury to a child through any recent act or failure to act." 23

Pa.C.S. § 6303(b.1)(1). In turn, the CPSL defines "bodily injury" to include "[i]impairment of physical condition or substantial pain." *Id.* at § 6303(a).

"While a petitioning party must demonstrate the existence of child abuse by the clear and convincing evidence standard applicable to most dependency determinations . . . the identity of the abuser need only be established through *prima facie* evidence[.]" *In re L.Z.*, 111 A.3d at 1174. Specifically, the CPSL provides "[e]vidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be *prima facie* evidence of child abuse by the parent or other person responsible for the welfare of the child." 23 Pa.C.S. § 6381(d).

Finally, this Court recognizes that "a child should not be found to be dependent merely because a sibling has been adjudicated dependent." *In re G.T.*, 845 A.2d 870, 872 (Pa. Super. 2004). However, "the Juvenile Act evidence[s] sensitivity to the safety and emotional well-being of children who, although not abused themselves, have a sibling who has been physically or sexually abused at the hand of a family member." *In re G.T.*, 845 A.2d at 874. Accordingly, it is well-settled that when a trial court adjudicates one sibling dependent due to child abuse, it is within the trial court's discretion to adjudicate other siblings dependent even if they have not been abused. *In re M.W.*, 842 A.2d 425, 429 (Pa. Super. 2004); *In re S.B.*, 833 A.2d 1116, 1123 (Pa. Super. 2003). Stated another way, a trial court may adjudicate an

unabused sibling dependent based on clear and convincing evidence that another sibling was abused. *In re R.P.,* 957 A.2d 1205, 1213 (Pa. Super. 2008). *See also Interest of C.B.,* 264 A.3d at 778 (finding claim that siblings were erroneously adjudicated dependent when they were not abused to be moot because parents were determined to be perpetrators of child abuse).

In their first issue, Parents aver that the trial court abused its discretion when it adjudicated Baby dependent and found him to be a victim of child abuse. Parents' Br. at 27. Parents argue that the court ignored the expert testimony of Dr. Scheller, which directly refuted the Agency's allegations of abuse. *Id.* at 27. Curiously, Parents concede that "it is within the province of the trial court to evaluate and weigh the conflicting expert testimony presented and arrive at a finding based on its determination as to the credibility of the witnesses." *Id.* at 28 (citations omitted). However, Parents assert that the trial court failed to make to make such credibility determinations when the court issued its orders of adjudication. *Id.* at 29. In addition, Parents present the speculative argument that the trial court did not obtain the transcript and study the exhibits carefully prior to making its decision. *Id.* Parents' claims are devoid of merit.[2]

---

[2] Parents also argue throughout the Brief, and for the first time on appeal, that the trial court failed to comply with Pa.R.J.C.P. 1405, which requires a court to enter findings specifying which, if any, of the allegations in the

*(Footnote Continued Next Page)*

Parents' argument that the trial court failed to make credibility determinations is belied by the record. In its Rule 1925(a) opinion, the trial court found Dr. Frasier's testimony—that Baby's "severe injuries were due to non-accidental head trauma" and that Baby "did not have a burst aneurysm because the bleeding did not come from the base of his brain"—to be credible. Trial Ct. Op., dated 9/12/22, at 11. In turn, the trial court wholly discredited Dr. Scheller's testimony, who opined that Baby's "injuries were solely due to a burst aneurysm and were not the result of child abuse." *Id.* In discrediting Dr. Scheller's testimony, the trial court opined:

> Dr. Scheller admitted that it is rare for a one[-]month[-]old child to have an aneurysm. Dr. Scheller reviewed the medical records but never examined [Baby] personally. Dr. Scheller accused [Hershey Medical Center] of a rush to judge the case as abusive head trauma. The court found him not credible in his disdain for the shaken head theory as the basis for [Baby]'s bleeding. Dr. Scheller's testimony was impeached by the Agency's counsel, who demonstrated that Dr. Scheller holds views which are contrary to widely accepted medical principals.

*Id.* After considering the conflicting evidence from the experts, and making credibility determinations, the trial court chose to place more weight on Dr. Frasier's testimony, finding it to be credible, clear, and convincing:

> Dr. Frasier's finding of head trauma is amply supported by the record. The factual evidence, as illuminated by her testimony as an expert in child abuse pediatrics, was, by any measure, clear and convincing. While Dr. Scheller's contradictory brain aneurysm

_____

dependency petition were proved by clear and convincing evidence. Parent's Br. at 31. This argument is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

theory challenged Dr. Frasier's analysis, in this court's view his testimony did not overcome the compelling evidence Dr. Frasier provided.

*Id.* at 12.

Relying on Dr. Frasier's testimony and the Agency's exhibits, the court made a finding that Baby was the victim of child abuse. To support this finding, the trial court explained, "[t]he numerous bruises on [Baby]'s body support the conclusion that trauma and/or shaking was inflicted upon [Baby]. One or more of the adults in [Baby]'s home abused [Baby] causing severe bleeding in his brain, resulting in the loss of substantial brain tissue and near death. Clear and convincing evidence supports a finding of child abuse with regard to [Baby]." *Id.* Moreover, the trial court emphasized that Baby almost died and suffered permanent brain damage as a result of Parents' actions or omissions, leaving him without proper parental care that would protect him from serious injury. The trial court explained that this supports an adjudication of dependency and necessitates Baby's removal from the home. *Id.* at 14-15. We agree.

Parents provide no legal authority for their argument that the trial court was compelled to make credibility determinations on the record when the court issued its orders of adjudication. Moreover, as noted above, Parents' argument that the trial court did not obtain the transcript and study the exhibits carefully prior to making its decision is speculative at best, and their

claims that this constituted error are otherwise unsupported by legal authority.

Our review of the record supports the trial court's findings, and we decline to reweigh the evidence. Accordingly, upon review, we find no abuse of discretion.

In their next two issues, parents aver that the trial court abused its discretion when it adjudicated X.F. dependent. Parent's Br. at 4. Parents once again claim that the trial court ignored Dr. Scheller's expert testimony that refuted the allegations of abuse against Baby. *Id.* Additionally, Parents argue that the trial court erred when it adjudicated X.F. dependent without independent evidence that X.F. was without proper parental care and control, apart from Baby's injuries. *Id.*

As explained above, the trial court was within its discretion to make credibility determinations and place greater weight on Dr. Frasier's expert testimony over Dr. Scheller's expert testimony in finding that Baby was a victim of child abuse. Moreover, as discussed above, it is well-settled that when a trial court adjudicates one sibling dependent due to child abuse, it is within the trial court's discretion to adjudicate other siblings dependent even if they have not been abused.

Here, the trial court opined that it did not have the authority to adjudicate X.F. dependent simply because the court adjudicated Baby dependent. Trial Ct. Op. at 13. However, based on the extent of Baby's

injuries, the ages of the Children, and its finding of child abuse, the trial court found that Parents could not ensure X.F.'s safety inside the home. The court stated:

> Although X.F. did not sustain any bodily injuries, his younger brother was injured to the extent that he almost died and has suffered permanent brain damage. [Baby]'s injuries were the result of either actions or omissions by the Parents and/or Paternal Grandparents. The Parents and Paternal Grandparents have chosen not to speak to the Agency's caseworkers other than for a minimal amount of time at the inception of the case. They have remained silent. Their silence speaks volumes and it prevents this court from concluding that X.F. would be safe if he were to be returned to their care. The court finds that to leave X.F. in the care of the Parents and/or Paternal Grandparents would have left him vulnerable to physical abuse and his safety could not be assured. The record wholly supports a finding that both of the Children need to be placed in the care of the Agency to assure their safety. . . . There is more than ample cause to sustain this court's findings of dependency as to X.F. as well as to [Baby].

*Id.* at 14-15. Upon review, we conclude the record supports the trial court's findings. The trial court properly exercised its discretion when it adjudicated X.F. dependent based on its finding that Baby was the victim of Child abuse. We discern no abuse of discretion.

In conclusion, the trial court did not abuse its discretion when it adjudicated Baby and X.F. dependent and found Baby to be the victim of child abuse.

Orders affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/8/2023